STATE *v.* EDWARD A. REYNOLDS.

November Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed January 4, 1938.

*H. C. Shurtleff* for the defendant.

*Webster E. Miller,* State's attorney, for the State.

BUTTLES, J.    The defendant was convicted of the crime of perjury in Washington county court and comes here on exception to the overruling by the trial court of his motion, made before trial, to dismiss the information.    All other exceptions taken during the trial were waived and the only contention now urged by the defendant is that the prosecution of the criminal charge in this case violates the first section of the Fourteenth Amendment of the federal Constitution in that he was denied equal protection of the laws.    He bases this contention on Section 6648 of the Public Laws which reads thus:   ''The commissioner shall not be liable in any civil action or criminal prosecu-

310

tion for any act or omission in his official capacity, under the provisions of chapters 271 to 276, made in good faith and upon reasonable grounds or for any, act or omission in accord with the advice of the advisory banking board.'' The commissioner referred to is the state commissioner of banking and insurance.

■ If the last clause of this section is to be given the broad construction for which the defendant contends the logical result would be that said commissioner would be immune from prosecution for any statutory or common law crime that he might commit, provided he could show that he acted on advice of the board. Should he be guilty of burglary, arson or murder, · proof that the advisory banking board advised commission of the crime would be a perfect defense. Such a result would obviously be unreasonable and absurd. It is always presumed in regard to a statute that no unjust or unreasonable result ·was intended by the Legislature. *Matter of Meyer,* 209 N. Y. 386, 103 N. E. 713, Ann. Cas. 1915A, 263; *Brackett* v. *Chamberlain,* 115 Me. 335, 98 Atl. 933.

■■ It has been said that ambiguity exists within the meaning of the rule authorizing resort to extrinsic facts when the literal meaning of the statute is absurd or unreasonable. 59 C. J. 1016; *Matter of Meyer, supra.* This court has held repeatedly that a construction of a statute leading to an absurd consequence must always be avoided if possible. *Brammall* v. *Larose,* 105 Vt. 345, 350, 165 Atl. 916; *Howley* v. *Kantor,* 105 Vt. 128, 131, 163 Atl. 628; *In re Fulham's Estate,* 96 Vt. 308, 317, 119 Atl. 433; *Morse* v. *Tracy,* 91 Vt. 476, 478, 479, 100 Atl. 923; *In re Howard's Estate,* 80 Vt. 489, 495, 68 Atl. 513. However, some authorities seem to require that a statute shall be something more than unreasonable or absurd before resort is had to judicial construction, and certainly great care should be used by the court not to expand proper construction into judicial legislation. The United States Supreme Court has recently said: ''But a consideration of what is there said will disclose that the principle''—avoiding absurd results—''is to be applied to override the literal terms of a statute only under rare and exceptional circumstances. The illustrative cases in the opinion demonstrate that, to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense. And there must be

something to make plain the intent of Congress that the letter of the statute is not to prevail." *Crooks* v. *Harrelson et al.*, 282 U. S. 55, 75 L. ed. 156, 51 Sup. Ct. 49.

We think that the section of the Public Laws under consideration here meets both of these requirements. The absurdity of a general license to the commissioner of banking and insurance to commit crime is so gross as to shock the general moral and common sense, and a consideration of the history of the enactment of this section, the other sections which were portions of the same act, the unusual business and economic conditions which then existed and the obvious purpose of the legislation make plain the intent of the Legislature that the broad literal meaning of the words, "in accord with the advice of the advisory banking board," in P. L. sec. 6648 was not to prevail without limitation. Section 6648 was enacted as section three of No. 124 of the Acts of 1933. P. L. section 6646 was section one of the same act, and P. L. section 6647 was section two thereof. There were twenty-three other sections of the same act, all pertaining to banks and banking, and eighteen of these sections were amendatory of previously existing banking laws. The first three sections above referred to were new matter, there being no previous legislative provision for an advisory banking board. The House and Senate journals disclose that H. 179, which became Act No. 124, was introduced in the House on February 16, 1933, as a committee bill from the committee on banking and insurance and passed in both houses without amendment, under suspension of the rules in the Senate. The bill was approved by the governor on February 24, 1933. It was entitled "An Act to Amend Certain Sections of the General Laws Specified Therein Relating to Banks and to Make Additional Provisions Relating Thereto."

We take judicial notice that at the time of this enactment the banks of the entire country were in great distress and that early in the following month all national banks were closed by order of the government during the so-called bank holiday. Most, if not all, of the Vermont state banks were also closed at the same time. It is quite evident that No. 124 was intended as emergency legislation, passed in view of the then critical situation of the hard-pressed banks. Section one of No. 124 (P. L. 6646), provides for the creation within the department of banking and

312

insurance of a board of five persons to be known as the advisory banking board. Section two of the same act (P. L. 6647), so far as here material, provides that "the board shall advise the commissioner or judge with regard to their official conduct relating to any question concerning a bank within the state. A bank may at any time request the commissioner to obtain an advisory opinion concerning any ruling which the commissioner has made." Section three (P. L. 6648) of said act, hereinabove quoted, provides for the exemption of the commissioner from liability, civil or criminal, under the conditions therein stated.

■ Upon considering all the circumstances and conditions hereinbefore set forth, including the unreasonable and absurd results of any other construction, we construe the words "advice of the advisory banking board" as used in P. L. 6648 to mean only advice to the commissioner under the provisions of this Act, which is advice with regard to his official conduct relating to any question concerning a bank within the State, as set forth in P. L. sec. 6647.

■■ There remains for consideration the question whether this defendant is denied the equal protection of the laws by reason of P. L. sec. 6648 when construed as we have indicated it must be construed. "This clause" (requiring equal protection of the laws), "merely requires that all persons subjected to such legislation shall be treated alike *under like circumstances and conditions* both in the privileges conferred and in the liabilities imposed." *Marchant* v. *Pa. R. R. Co.*, 153 U. S. 380, 390, 38 L. ed. 751, 14 Sup. Ct. 894. "Whenever the law operates alike upon all persons and property *similarly situated,* equal protection cannot be said to be denied." *Walston* v. *Nevin,* 128 U. S. 578, 32 L. ed. 544, 9 Sup. Ct. 192. The defendant claims to have been denied equal protection only to the extent that special favor is alleged to be shown to the commissioner of banking and insurance. But such special favor, if any there be, affects other matters exclusively and it is not made to appear that it could possibly have any application to the commission of the crime with which this defendant is charged. Otherwise stated, even if this defendant held the office of commissioner of banking and insurance it does not appear that any advice that might have been given him by the advisory banking board "with regard to

his official conduct relating to any question concerning a bank within the state'' could be of the slightest avail as a defense to the charge here made against the defendant. Hence there is no denial of the equal protection of the laws.

*Exceptions overruled. Let execution be done.*