## Fort Orange Council, Inc., Boy Scouts of America v. Herbert French, et als

(125 A2d 835)

May Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd JJ. and Barney, Supr. J.**

Opinion Filed October 2, 1956.

*John A. Lowery* (*A. Luke Crispe* on the brief) for the defendants.

*Waldo C. Holden* for the plaintiff.

**Hulburd, J.** The plaintiff is Fort Orange Council, Inc., Boy Scouts of America, a New York corporation. It brought its petition in chancery for a declaratory judgment to determine the taxability of its real and personal property situated in the town of Stratton, Vermont. The defendants are the listers and tax collector of the town of Stratton, the town of Stratton, and its alter ego, the town of Stratton School District.

A hearing was had before the chancellor who made findings of fact and amended findings of fact and thereafter sign-

ed a declaratory decree holding the property in question to be exempt from taxation. To this decree the defendants have excepted. They do not challenge the chancellor's findings. Their only exception is to the decree. But one question is raised here: is the decree warranted by the pleadings and supported by the findings of fact? *Baker* v. *Koslowski*, 117 Vt 124, 85 A2d 500. The defendants claim that when the law is applied to the facts found the decree can not be justified. This leads, first, to an examination of the facts found, and, secondly, to a consideration of the applicable statutes. The facts that are before us follow:

The plaintiff, Fort Orange Council, Inc., Boy Scouts of America, is a non-profit corporation without capital stock and with no income or dividends accruing to any person. It is found to be a corporation created for charitable purposes. It was organized under the laws of New York, with its principal office in Albany of that State. By its certificate of incorporation on file with the Secretaty of State for the State of New York, it declares the purposes of its incorporation to be as follows:

> "The particular objects for which this corporation is formed are to develop character and usefulness of its members and to improve the mental, social and physical condition of young men; to promote ability of the boys to do things for themselves and others; to train them in scoutcraft and to teach them patriotism, courage, self reliance and kindred virtues."

On April 1, 1948 the plaintiff purchased some 1600 acres of land in the town of Stratton, Vermont. The subject matter of this litigation is a parcel consisting of 400 acres referred to as Lot 3 in the Seventh Range. On this tract the plaintiff operates a Boy Scout Camp for the conduct of an organized training program designed to carry out the express purposes of the corporation as stated in its certificate of incorporation. This project encompasses a total investment of $100,000.00 including land, roads, trails, buildings, - including administration building, health lodge, equipment and storage fa-

cilities and some seven camp sites. On Lot 3 there is also a water front development for swimming and boating and several troop camp sites. The land in question is used exclusively for the purposes recited in the plaintiff's certificate of incorporation previously quoted. However, such use is not exclusive to the members of the Fort Orange Council, Inc., Boy Scouts of America, but is available to and used by Boy Scouts from any other section of the country, who care to take advantage of the project. During the summer of 1955 about one thousand Boy Scouts made use of the facilities, coming mainly from Albany, Rensselaer and Columbia Counties in New York State, but there were Scouts from other areas, including one troop from Arkansas and one from Vermont.

The sources of revenue for the operation of the Boy Scout Camp at Stratton exclusive of campers' fees is derived from Community Chest of Albany, Community Chest of Hudson, the Hawley fund, so-called, a trust fund designed for the advancement of Scouting and various minor miscellaneous contributions. In addition some revenue is derived from sales of commodities at the camp canteen. Boy Scouts in attendance at the camp are charged a minimum weekly fee of $3.00 per camper where no sustenance is provided. A minimum weekly fee of $20.00 is assessed for a provisional site where board is provided. Camp sites are available to Boy Scout troops including tent, bedding, equipment and use of the general camp facilities with a minimum charge per troop of $35.00 per week. Fifty campers can be accommodated at such site. During the last four years no profit has been derived from this source of revenue.

The camp is operated in the summer during weekends throughout the year in furtherance of the program as established on a nationwide basis of the Boy Scouts of America. Boy Scouts using the camp facilities devote 75% of their time in pursuit of an established training and eduction program under trained Boy Scout leaders. Approximately 25% of the time is devoted to recreational activities conducted on a supervised basis under the same leadership. Of those attending approximately 80% received instruction and earn-

ed advancement in scouting grade through the various established ranks as set forth in the national Boy Scout program. The training program, carried out at the camp, has the primary objective of developing character and citizenship. Incident to this program training is afforded the participants in aquatics, marksmanship, woodcraft and allied subjects. The secondary objective in the training program and in the facilities made available by way of the Stratton Camp is the development of personal health of the campers and the provision for organized recreation.

At no time has the plaintiff's real estate in the Town of Stratton been exempted from taxation by a vote of the town.

The plaintiff has paid town taxes to the defendants for the year 1953 in the amount of $542.32 and school taxes for the year 1953 in the amount of $240.71. These taxes were paid by the plaintiff under protest. The plaintiff paid on or about September 1 for the year 1954 under protest town taxes to the defendants in the amount of $568.80 and a school tax in the amount of $234.68.

Plaintiff has received a tax bill for 1955 taxes on the subject property from the Town of Stratton and the Town of Stratton School District in the amount of $797.47.

Based on these findings, the chancellor entered a decree in favor of the plaintiff enjoining the defendant town and town school district from collecting taxes from the plaintiff upon Lot 3 Seventh Range in the Town of Stratton for the year 1955. The chancellor further ordered the Town of Stratton to refund to the plaintiff the sum of $568.80 paid by the plaintiff under protest as taxes for the year 1954. Likewise the Town of Stratton School District was ordered to refund to the plaintiff the sum of $234.68 which had similarly been paid by the plaintiff under protest. And lastly, the chancellor ordered the listers of the Town of Stratton to correct the Grand List of the Town for the years 1954 and 1955 by designating the property of the plaintiff known as Lot 3 in the Seventh Range as exempt for the years, 1954 and 1955.

In connection with the foregoing, the chancellor declared that since the use of the subject property was not confined to members of the plaintiff corporation such property did not

fall within V. S. 47, §662. (Reference to this section will disclose that a vote of the Town would have been necessary for an exemption had this section been applicable. No such vote had been taken.) For convenience, we set forth the section last referred to as well as the pertinent portion of our basic exemption Statute. We quote the basic statute first and then follow with the other section which was a later enactment.

V. S. 47, §649. "*Property*. The following property shall be exempt from taxation: * * * IV. Real and personal estate granted, sequestered or used for public, pious or charitable uses; * * * *"

V. S. 47, §662. "When a society or body of persons associated for a charitable purpose, in whole or in part, including fraternal organizations, owns real estate used exclusively for the purposes of such society, body or organization, such real estate may be exempted from taxation, either in whole or in part, for a period not exceeding ten years, if the town so votes. Upon the expiration of such exemption, a town may vote additional periods of exemption not exceeding five years each."

■ These two sections have been construed with reference to each other in *Grand Lodge of Vermont* v. *City of Burlington*, 104 Vt 515, 520, 162 A 368. It was there determined that the later statute, V. S. 47, §662, (formerly G. L. §694) is an exception to or qualification of the earlier statute, V. S. 47, §649 (formerly G. L. §684). The Court pointed out that our statutes relating to tax exemption must be construed as parts of one system. We must keep in mind that V. S. 47, §649, was passed first. It provided for certain general exemptions, having within itself numerous qualifying provisions not here material. Thereafter, at a much later date, V. S. 47, §662 was passed. By this later enactment, the general exemption of section 649 was modified and made less inclusive. In other words, if the facts are such that a given case falls within Sec. 662, the provisions of that section are controlling and there can be no exemption without a vote of the town to that effect.

So in the present case, if the plaintiff is seeking to use the

real estate in question "exclusively for the purposes of such society, body or organization" then section 662 applies and this restricted, exclusive use defeats any exemption unless voted by the town. In brief, under Section 662 the price of exclusiveness, however praiseworthy in motive, is taxes, - unless the town specially votes an exemption.

The court below held that the real estate in question was not used exclusively for the purposes of such society, body or organization. It did so on the ground that the use was without restriction to membership in the plaintiff corporation. This was because "the charitable uses of this real property were not confined to members of the Ft. Orange Council Inc., Boy Scouts of America, but was available to and used by Boy Scouts of America from anywhere in the United States who were members of the national organization, Boy Scouts of America."

Did such a finding negative the proposition that the premises were used exclusively for the purposes of such society, body, or organization? The defendants contend that it did not. The defendants point to the finding of the court which states that the property was used exclusively for the purposes recited in the plaintiff's certificate of incorporation. This certificate, it will be recalled, set forth the objectives of the corporation to be to develop character, and usefulness of its members. It follows, therefore, so the defendants argue, that the court has found, in effect, that the premises in question were used exclusively for the benefit of its members and not for the benefit of the public at large.

There is, of course, no finding in the case that the premises were available to any one but a member of the Boy Scouts. The certificate of incorporation does recite as an object that of improving "the mental, social and physical condition of young men," but there is no finding that the use of the plaintiff's real estate was extended to other than Boy Scouts; on the contrary the finding shows it was definitely confined to them.

It comes down to this: did the plaintiff by making its facilities available to Boy Scouts from other parts of the country sufficiently widen the scope of the use of its property so

that it could be said that it was not "used exclusively for the purposes of such society, body or organization?"

Let us return for a moment to *Grand Lodge of Vt.* v. *City of Burlington*, 104 Vt 515, 162 A 368. There it was assumed that the plaintiff was a charitable organization. In spite of this assumption it was held that G. L. §694 (now V. S. 47, §662) defeated any right that the plaintiff had to an exemption. If we went further and assumed that the use of its facilities, while primarily for the benefit of the plaintiff and its local members, was made available to such masons from other parts of the country who cared to take advantage of them, we would then have a case closely analogous to the one for decision. It would be difficult to see how, under the assumed state of facts, the court could consider that the mere availability to other masons from other areas demonstrated that the real estate was not used exclusively for the purposes of such society, body or organization. In fact, it would seem to point up the very reverse. The circle to be sure would be a little wider, but it would still be a closed circle to those outside the organization.

Coming back to the case in hand the situation would be the same. We would not have, in the words of *Boyce* v. *Summer*, 97 Vt 473, 478, 124 A 853, 854, a benefit "conferred upon an *indefinite class* of persons who are a part of the public."

The plaintiff has argued that the Boy Scout organization is not of the same nature as the masonic body. But that is not the question here. V. S. 47, §662 covers more than fraternal organizations as even a casual reading of it will show. No doubt when the legislature enacted that section it did not contemplate individually every possible organization to which the law might apply. We must be realistic. What the legislature intended was that every organization which conformed to the pattern set forth in the statute should be subject to it. On the facts found the plaintiff fits the pattern prescribed by the legislature and the statute is therefore applicable to it. If such a result appears unsatisfactory to the legislature, it will have to vary the pattern accordingly. It has already enacted special legislation with respect to real estate owned by the Grand Army of the Republic and the

Young Men's Christian Association. It may not have been prepared to think of Boy Scout organizations as real estate-owning bodies.

No light is shed on this problem by decisions from other jurisdictions; none of them have a statutory provision of the nature of Sec. 662. Without it under dissimilar legislative background, a different result might be reached. For the reasons stated the declaratory decree in favor of the plaintiff can not stand.

*Decree reversed and cause remanded. Let a new decree be drawn and entered in accordance with the views expressed herein.*