## Lenore F. Broughton v. Town of Charlotte

[356 A.2d 520]

No. 221-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed April 6, 1976

*Pierson, Affolter & Amidon,* Burlington, for Plaintiff.

*Samuelson, Bloomberg, Portnow, Schuster & Lang, Ltd.,* Burlington, for Defendant.

**Smith, J.** This case was initially brought by appellee Lenore Broughton, record owner of some 17.5 acres of land in the Town of Charlotte. Her appeal is predicated on the contention that a portion of this land, 8.5 acres, is exempt from local property taxation by virtue of 32 V.S.A. § 3802(4) which reads:

> The following property shall be exempt from taxation:
> . . . lands owned or leased by colleges, academies or other public schools.

Appellee argues that the land in question is entitled to this exemption due to the fact that since January 1, 1973, she has leased it to Schoolhouse, Inc., a non-profit educational corporation organized for the purpose of "establishing, conducting, managing and maintaining a non-denominational school open to all races and creeds for the education and instruction of children of both sexes in all areas of primary education."

In August, 1973, appellee's request for removal of the leased property from the Charlotte Grand List was denied by the Board of Civil Authority of the Town of Charlotte. In accord with 32 V.S.A. § 4461, Mrs. Broughton appealed this denial to Chittenden Superior Court. After an evidentiary hearing on the merits, the Chittenden Superior Court issued its find-

ings of fact and conclusions of law granting appellee the requested exemption. It was the lower court's view that the land was land "leased by a public school for educational purposes within the meaning of 32 V.S.A. § 3802(4)." Appellant Town of Charlotte brings this appeal from the determination of the Chittenden Superior Court exempting the property leased to Schoolhouse, Inc. from taxation and ordering appellant to return the tax monies for the years 1973 and 1974 collected under protest from appellee. The primary issue raised by the present appeal is whether the statutory exemption from taxation provided by 32 V.S.A. § 3802(4) can be read to extend to property which is not owned by a qualified organization but is instead leased to that body for its exempt purposes by a landowner-lessor who herself seeks exemption for the property.

■ ■ In order to best determine the meaning and import of 32 V.S.A. § 3802(4) and the coverage contemplated by its language, review of the history of tax exempt lands in Vermont is advisable. In this process certain well established rules should be made note of and followed. Any exemption from property taxation provided by statute is to be strictly construed in favor of the taxing authority as against those who seek its benefits. Any doubts that may arise as to the application of a particular tax statute should be interpreted against the exemption. *Stowe Preparatory School, Inc.* v. *Town of Stowe*, 124 Vt. 392, 205 A.2d 544 (1964). In addition, where the statute appears equivocal and its meaning uncertain, resort may be had to such matters as the history of the particular enactment and the trend of like legislation. *Town of Randolph* v. *Montgomery*, 109 Vt. 130, 194 A. 481 (1937).

The legislative development of the tax exemption under consideration is an ancient one. Its derivation can be traced to the early Vermont phenomenon of "lease" or "glebe" lands. These "lease lands" originated as an integral element of our public institutions even before statehood, having been provided for in town charters granted by Benning Wentworth under New Hampshire authority, and continued in practice by the Vermont General Assembly thereafter. Bogart, "The 'Lease Lands' in Vermont", *Vermont Quarterly*, Vol. XVI, p.

150 (Oct., 1948) [hereinafter cited as Bogart]. These lease lands were areas set aside by the issuing powers for the purpose of aiding in the settlement of Vermont and should ideally be regarded as a kind of subsidy and inducement for the establishment of schools and churches. Bogart, *supra*, at 156.

The Charter of the Town of Bethel, Vermont, granted in 1779, is an excellent example of this practice:

> Together with five equal shares to be appropriated to public uses as follows, Viz. first one Share for the use of the Simonary or Colledge. . .; one share for the first settled Minister . . .; one share for the use of the County Grammer Schools . . .; and one share for the use and Support of a School or Schools within said Town. *State Papers of Vermont*, Vol. 2, p. 23 (1923).

Since these rights of land were conceived so as to provide funds to support the favored enterprises, it early became the practice to lease the land, usually in perpetuity and usually for a minor sum, to private persons. The rental fees therefrom were used to support the exempt body and its purposes. Bogart, *supra*, at 161.

The lease lands from their inception have enjoyed continuous tax exemption. This fact is to be attributed to action on the part of the General Assembly. Evidence of this, and a precursor of the present law, is "An Act Prohibiting the Taxing of Public Lands" passed by the Vermont General Assembly on June 17, 1785:

> Therefore, Be it enacted and it is hereby enacted by the Representatives of the Freemen of the State of Vermont in General Assembly met, and by the authority of the same that all Lands granted for public or pious uses . . . while remaining for such use or uses shall be free from taxation. *State Papers of Vermont*, Vol. 14, p. 11 (1966).

A natural result of this joinder of minimal rental leases and exemption from property taxation was a windfall to those fortunate enough to be tenants on the lease lands. Thus the lease lands rapidly, as tax burdens increased, developed into community liabilities as opposed to the design originally intended for them. Bogart, *supra*, at 162. Fortunately, how-

ever, this rather peculiar tax treatment accorded the lease lands is to be distinguished from the prevailing Vermont rule concerning the exemption of land like that of the appellee. The case of *Willard* v. *Pike*, 59 Vt. 202, 9 A. 907 (1886) established the standard for property tax exemption under 32 V.S.A. § 3802(4) and its precursors:

> Although, under our statute, ownership is all that is expressly required, it is probable that the legislature did not intend to exempt property simply because owned by an academy. . . . The ownership must undoubtedly be, not for speculative purposes, but for the appropriate use and benefit of the institution as an academy or a college in carrying out the purposes of its incorporation.

*Id.* at 218. Obviously, then, the rule to be followed in Vermont in respect to real property other than the lease lands, a fact accounted for by the Legislature in 32 V.S.A. § 3610(d), is that there can be no freedom from taxation unless the property is both owned by a qualified body and used by such a body in pursuit of one of its exempt purposes. *Troy Conference Academy* v. *Town of Poultney*, 115 Vt. 480, 486, 66 A.2d (1949). The exemption provided by 32 V.S.A. § 3802(4) applies when there is a concurrence of ownership of the questioned property and occupancy of it by an exempt institution for an exempt purpose. *Animal Rescue League* v. *Bourne's Assessors*, 310 Mass. 330, 37 N.E.2d 1019, 1023 (1941).

 Since its first appearance in its present form in the Laws of 1855, No. 43, § 4, the phrase "owned or leased by" has been consistently employed by the General Assembly in the tax statute. In all probability this resulted from prior unhappy experience with the lease lands. Certainly, the Legislature did not contemplate exemption in the case where the property is merely used by the institution, as a lessee, for a purpose which, when coupled with ownership, would otherwise exempt the parcel. Thus a distinction is to be made between property "owned or leased by" and property "leased to" an exempt organization. This distinction surfaces in the first sentence that generally appears in the standard lease contract, "That lessor hereby *leases to* lessee, and lessee hires from lessor" (emphasis added). 7 Am. Jur. Legal Forms

7:1061, at 665. Under the express terms of the Vermont statute as normally understood, the simple fact that a lessor or lessee is tax exempt willl not prevent the property from being taxed where the lessee or lessor is not an exempt body or the property is not employed for a tax exempt purpose. 3 Thompson on Real Property § 1159 (1959). This is the necessary meaning to be attributed to the words "owned or leased by" contained in 32 V.S.A. § 3802(4), since the purpose of that enactment was to provide for the furtherance of the general welfare by promoting the direct employment of property for services which would otherwise have to be offered by the state or which should be encouraged by the state for humanitarian purposes. To find otherwise would result in a situation analogous to that existing under the lease lands where the major beneficiaries of the exemptions were those private persons with the leasehold interest who were able to avoid the property tax, thereby depriving Vermont towns of much needed tax revenues. In the present case the fee owner of the land would be permitted to enjoy the appreciation in value of the property without being subject to any tax whatsoever on that value. Although the appellee is to be commended for her generous and good faith actions, to rule in her favor would attribute to the statute and the General Assembly an unjust and unreasonable meaning and intent. In fact, to so find would ascribe to the act no meaning whatsoever since exemption would depend on the peculiar facts and bona fides of each situation. Such a result is, of course, to be avoided. *State* v. *Reynolds*, 109 Vt. 308, 1 A.2d 730 (1937).

*The judgment order of the Chittenden Superior Court is hereby reversed and the cause remanded for entry of a new judgment order consistent with the views expressed in this opinion.*