### Trustees of Vermont Wild Land Foundation v. Town of Pittsford, Town School District of Pittsford, and Village of Pittsford

[407 A.2d 174]

No. 342-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 17, 1979

440

*Williams and Williams, P.C.*, Poultney, for Plaintiffs.

*Theodore S. Mandeville, Jr.*, of *Crowley, Banse & Kenlan*, Rutland, for Defendant.

**Daley, J.** The plaintiffs brought this action for declaratory judgment against the defendant municipal corporations requesting that their land be declared exempt from property taxes under 32 V.S.A. § 3802(4) and that the defendants be restrained from levying such taxes against that land. The court held the plaintiffs' property exempt as a public use, and the defendants appeal.

The plaintiffs are trustees of the Vermont Wild Land Foundation, a trust founded by W. Douglas Burden, which is exempt from federal and state income taxes under § 501(c)(3) of the Internal Revenue Code. The Foundation is organized for the following purposes:

(a) holding and preserving forest and wild lands to enable the inhabitants of this and other States, and especially young people, students, teachers, scientists and those engaged in research, to commence, further and pursue their education and studies in all phases of natural history, biology, botany, ecology, geology, wild life, forestry, water use and conservation and other similar subjects; and

(b) promoting public education and studies in the above subjects, and in general, in nature preservation and conservation; and

(c) in conjunction with and to further the above purposes, establishing and maintaining a sanctuary and protected area for wild animals and birds and a preserve for the growth and development of native flowers, ferns, mosses, lichens, aquatic plants, trees and shrubs all for the benefit of the public; and

(d) establishing and maintaining a museum and library of objects and books relative to the above subjects for public use and study; and

(e) publishing and disseminating educational and scientific material designed to promote and further studies and research in the above subjects, and to educate people to recognize the value of preserving natural areas, water sources, vegetation and wild life.

Mr. Burden donated approximately 2100 acres to the Foundation to be used for those purposes. 1204 acres are located in the town of Pittsford. The remaining 900 acres are in the neighboring towns of Sudbury, Hubbardton and Brandon.

The Pittsford property, which is the subject of this dispute, is an undeveloped section of wilderness. Because of its ecological variety and its primitive state, it is made available by the Foundation for scientific research. It has not only streams and waterfalls, but also marshes and swamps. Its timber includes both softwood and hardwood, and it contains a primeval stand of hemlock and pine. Coyote, bobcat, fisher, otter, and beaver have been spotted within its environs.

Public access to the property is strictly controlled, however. Entrance is by permission only. The plaintiffs exercise discretion as to who shall enter the land. Decisions are made on the basis of applications, which must be detailed in considerable depth, much as with an application for a federal grant. The plaintiffs explain that limited use is essential in order to maintain the value of the property as a scientific "laboratory." In Mr. Burden's testimony, "If you want to maintain wild land, you can't open it to every Tom, Dick and

Harry and let them run rampant over it." Anyone engaged in science, education, or research would almost always receive permission automatically. Thus, although casual visitors might be excluded, a forester, biologist, or ecologist would be admitted as a matter of course. An alleged scientific purpose does not guarantee admission, however. One application was denied because the plaintiffs did not "feel" that it was "very well coordinated."

Land use is, in practice, further limited in other ways. First, the availability of the land for research has not been widely nor actively publicized. Publicity has been restricted to the distribution of 250 pamphlets to regional colleges and to a few articles in regional periodicals. Second, the property itself is unmarked and entrance is via a gate on private property. Third, although would-be users must call in advance, the Foundation's telephone number is not published. Anyone seeking the number, however, could, it was explained, easily obtain it by asking "around Brandon."

In point of fact, actual use has consisted primarily of occasional research at the collegiate level in the areas of biology, ecology, forestry and geology. That research has, in the main, been conducted by professors and students from a nearby college.

■■ On appeal, the defendants contend that the court's conclusion of public use is not supported by its finding and the evidence. They assert that the Foundation's use is too narrow and too restricted to support a public use exemption under § 3802 (4). That section states:

> The following property shall be exempt from taxation:
>
> . . . .
>
> (4) Real and personal estate granted, sequestered or used for public, pious or charitable uses . . . .

We note initially that neither the dedication of the property to charitable purposes nor the decision of the plaintiffs as to how the property shall be used controls the question of whether the property shall be exempt from taxation. *Shelburne Museum, Inc.* v. *Town of Shelburne*, 129 Vt. 341, 344, 278 A.2d 719, 721 (1971). The "direct and immediate use

of the property" is determinative of an exemption under § 3802(4). *New York Institute for the Education of the Blind* v. *Town of Wolcott,* 128 Vt. 280, 285, 262 A.2d 451, 454 (1970). In order to qualify, the property must be used for a public use and its use must confer a benefit upon an "indefinite class of persons who are a part of the public." *Id.* The distinction is between a private or limited, and a general or indefinite, benefit. *Congregational Church* v. *Attorney General,* 381 N.E.2d 1305, 1307 (Mass. 1978). It is not essential that every member of the community be actually served. But the benefits conferred must be upon the "public at large, or an indefinite part of such public," *Experiment in International Living, Inc.* v. *Town of Brattleboro,* 127 Vt. 41, 48, 238 A.2d 782, 787 (1968), rather than a "closed circle," or group "determined by choice or selection." *New York Institute for the Education of the Blind* v. *Town of Wolcott, supra,* 128 Vt. at 286, 262 A.2d at 455.

The requirement that the use benefit the general public rather than merely a specific class or organization reflects the economic underpinnings of the exemption. "Exemptions are granted for the performance of service essentially public in nature on the theory that such service benefits the public generally and, in so doing, assumes a share of the public burden." *English Language Center, Inc.* v. *Town of Wallingford,* 132 Vt. 327, 329–30, 318 A.2d 180, 182 (1974). Thus, we have denied exemptions where the service was not "essentially public in nature," as where the beneficiaries were restricted to members of a particular organization, *Fort Orange Council, Inc.* v. *French,* 119 Vt. 378, 125 A.2d 835 (1956), or to persons selected by a particular organization, *Experiment in International Living, Inc.* v. *Town of Brattleboro, supra.* In contrast, service to the blind, which assumes "a share of the public burden," was held exempt. *New York Institute for the Education of the Blind* v. *Town of Wolcott, supra.*

The plaintiffs do not deny that a narrow segment of the public actually uses the property. Indeed, they assert that limited use is implicit in the concept, value and preservation of a wilderness area. But, they contend, such restricted use does not preclude an exemption under § 3802(4). They argue that although the public at large is not permitted to use the

property, it nonetheless benefits from the use of the land. That benefit is not in the use, but in the fruits of the research. We are not persuaded, however.

■■ Undoubtedly, education of a few persons may, in a broad sense, benefit the public at large. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 388, 6 N.E.2d 374, 382 (1937). However, the governing consideration is the direct and immediate, rather than the remote or incidental, benefit derived from the use of the property. *Shelburne Museum, Inc.* v. *Town of Shelburne, supra*, 129 Vt. at 346, 278 A.2d at 721. "Whatever directly promotes individual interest, although it may also tend incidentally to the public benefit, is essentially a private, and not a public, activity." *English Language Center, Inc.* v. *Town of Wallingford, supra*, 132 Vt. at 331, 318 A.2d at 183. In this case, the immediate benefit from the use of the property is restricted to a limited number of students and researchers at the college level. Moreover, the determination as to which particular researchers may use the land is under the control, and at the discretion of, the plaintiffs. Thus, the beneficiaries of the use of the land are restricted to a small, select number of students, professors, and researchers chosen by the plaintiffs for their own reasons. *Experiment in International Living, Inc.* v. *Town of Brattleboro, supra*, 127 Vt. at 48, 238 A.2d at 787. This is not a public use.

■ Although the Foundation's endeavors are admirable, the benefit to the public is too tangential to require the support of the community of Pittsford. The conclusion of the superior court that plaintiffs' property is exempt from taxation under 32 V.S.A. § 3802(4) is not supported by the findings and the evidence. In so holding, we are mindful of the rule that exemption statutes are to be construed most strongly against those claiming the benefits. *Medical Center Hospital of Vermont, Inc.* v. *City of Burlington*, 131 Vt. 196, 199, 303 A.2d 468, 470 (1973).

*Reversed and remanded for entry of declaratory judgment consistent with the views expressed in this opinion.*