### Planned Parenthood of Vermont, Inc. v. City of Burlington

[503 A.2d 545]

No. 83-037

Present: **Hill, Underwood, Peck and Gibson, JJ., and Daley, J. (Ret.), Specially Assigned**

Opinion Filed November 1, 1985

*Spencer R. Knapp* of *Dinse, Allen & Erdmann*, Burlington, for Plaintiff-Appellee.

*Richard C. Whittlesey*, Assistant City Attorney, of *McNeil, Murray & Sorrell, Inc.*, and *Gretchen S. Bailey*, Assistant City Attorney, Burlington, for Defendant-Appellant.

**Underwood, J.** Planned Parenthood of Vermont (taxpayer) filed an action in Chittenden Superior Court seeking a declaratory ruling that its real estate is exempt, pursuant to 32 V.S.A. § 3802(4), from taxation by the City of Burlington (City). The trial court determined first, that taxpayer's property was tax exempt under 32 V.S.A. § 3802(4), and second, that the statutory exception to tax exempt status, applicable to health care facilities under 32 V.S.A. § 3832(7), did not apply to the taxpayer's property. The City appealed that declaratory ruling. We affirm.

Taxpayer is the owner of a three-story building located at 23 Mansfield Street in the City of Burlington. In 1980, the City notified the taxpayer of its intent to assess property taxes on taxpayer's real and personal property. The City subsequently billed the taxpayer in the amount of $11,413.92 for the tax year ending June 30, 1981, and $12,064.00 for the tax year ending June 30, 1982, which assessments the taxpayer paid under protest.

In this appeal, the parties now agree that the taxpayer's property comes within the exemption provisions of 32 V.S.A. § 3802(4).[1] The remaining issue before this Court, therefore, is whether taxpayer's property is excepted from that exempt status by virtue of 32 V.S.A. § 3832(7).[2] That latter statute would act to except or preclude taxpayer's property from qualifying for the ex-

---

[1] Title 32 V.S.A. § 3802 provides in part:
     The following property shall be exempt from taxation:
     . . . .
          (4) Real and personal estate granted, sequestered or used for public, pious or charitable uses . . . .

[2] Title 32 V.S.A. § 3832 provides in part:

emption provisions of 32 V.S.A. § 3802(4), if the property is used "primarily for health . . . purposes," unless such an exemption were specifically approved by the voters of the City at a duly warned meeting for that purpose. Thus the threshold question for the trial court was to determine the primary use being made of taxpayer's property during the tax years 1981 and 1982.

The trial court made extensive findings of fact on this issue and concluded that taxpayer's property was exempt from taxation under 32 V.S.A. § 3802(4). It determined that the property was used for a public purpose and its primary use was not for health purposes. Therefore, the property's tax exempt status, under 32 V.S.A. § 3802(4), did not fall within the exception set forth in 32 V.S.A. § 3832(7). The trial court also found that taxpayer's primary use of the property was for family planning, specifically for the provision of contraceptive devices. The trial court then went on to remark that contraceptives are for the prevention of conception and not to enhance or safeguard one's health.[3] The performing of vasectomies or abortions, on taxpayer's property, was found by the trial court to be only incidental to taxpayer's primary purpose of family planning and the provision of birth control devices. This Court recently stated:

> A party who, on appeal, challenges the findings and conclusions of a court below has a difficult burden to overcome. This is because we accord great deference to the judgment of the court and will not set aside the court's findings unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. V.R.C.P. 52(a). Even when

---

The exemption from taxation of real and personal estate granted, sequestered or used for public, pious or charitable uses shall not be construed as exempting:

. . . .

(7) Real and personal property of an organization when the property is used primarily for health or recreational purposes, unless the town or municipality in which the property is located so votes at any regular or special meeting duly warned therefor.

[3] The trial court, in its conclusions of law, could not "conclude that the mere provision of contraceptives in and of itself [was] a 'health' purpose. Health is an aspect of safe and effective contraception, but, as the word implies, most contraceptives are used to prevent contraception and not to enhance or safeguard one's health."

there is substantial evidence to the contrary, the findings must stand if supported by credible evidence.

*Vieweger* v. *Clark,* 144 Vt. 630, 632, 481 A.2d 1268, 1270 (1984) (citations omitted). With this standard in mind, we turn to the findings of the trial court.

The trial court addressed the threshold question of determining the primary use of taxpayer's property in two ways. First, it considered the percentage of the total floor space of taxpayer's property which was used for various purposes. The trial court found that only the first floor, which housed taxpayer's Burlington clinic, was used for the provision of medical, surgical, diagnostic or therapeutic services.

Second, the trial court considered the proportion of total client visits to taxpayer's property which were allocated to the various services provided by the taxpayer at its Burlington site. It found that 4.1% of client visits involved abortions or vasectomies (no figure was given for female sterilizations), and 6.0% involved colposcopy services for the purpose of cervical cancer diagnosis; both of these uses come within the meaning of health purposes. The trial court found that 0.9% of client visits were related to an infertility program. Finally, the trial court found that 95% of client visits were related to receiving information, counseling and devices related to birth control.[4] Although the trial court found that client visits related to birth control activities may include physical examination and diagnosis, that a physician must supervise and direct the prescription of all oral contraceptive pills, and that intrauterine devices and diaphragms are fitted by medical personnel, it did not make a finding concerning the percentage of client visits related to birth control which utilized such medical services.

Under either of the above-described methods utilized by the trial court to determine the primary use of taxpayer's property, it is clear that if, as the City contends, the term "health . . . purposes," as used in 32 V.S.A. § 3832(7), includes all services related to family planning, then the taxpayer's property is used primarily for health purposes, the statutory exception to its tax-exempt status, pursuant to 32 V.S.A. § 3802(4), is applicable, and the trial court's decision must be reversed. We therefore now turn to the

---

[4] The percentages cited herein total more than 100% because client visits may be for more than a single purpose.

▮

statutory meaning of the term "health . . . purposes" as used in 32 V.S.A. § 3832(7).

▮ This Court has recently reiterated:

> that the primary method of interpreting the meaning of a statute is through the "plain meaning rule": "The most elemental rule of statutory construction is that the plain meaning of the statute controls. If confusion or ambiguity does not appear, then the statute is not construed but rather is enforced in accordance with its express terms."

*Cavanaugh* v. *Abbott Laboratories,* 145 Vt. 516, 529, 496 A.2d 154, 162 (1985) (quoting *Heisse* v. *State,* 143 Vt. 87, 89, 460 A.2d 444, 445 (1983)).

▮ Taxpayer contends that the plain meaning of the word "health" as used in the statute refers principally to a condition of being free from disease or injury. Under this approach, activities related to the prevention of pregnancy would not be considered health activities as they are not directed primarily at preventing or curing a disease or physical injury. The City, however, contends that the word "health" as used in the statute incorporates all activities related to the "maintenance of health, i.e., the prevention of disease and other conditions threatening a sound body, mind, and spirit." We cannot agree with the City that a definition of "health" should be given such a broad meaning in construing 32 V.S.A. § 3832(7).

Such a broad definition is not required by the language of the statute. Furthermore, the definition suggested by the City is so broad as to include virtually any activity which an individual might undertake for his or her own benefit, including, inter alia, athletic pursuits (physical well-being), religious activities (spiritual well-being) and social functions (emotional well-being). Such an expansive definition could lead to the incorporation of virtually any public activity within the scope of health-related activities under 32 V.S.A. § 3832(7). Such a result would be absurd and irrational, and we therefore decline to accept such a definition of the statutory term. *Heisse, supra,* 143 Vt. at 90, 460 A.2d at 446.

The interpretation set forth by the taxpayer, and accepted by the trial court, is both reasonable and consistent with the meaning of the statute as a whole. Therefore, taxpayer's property is tax exempt.

*Judgment affirmed.*

**Peck, J.,** dissenting. I disagree with the result reached by the majority and accordingly I feel compelled to file this dissenting opinion explaining my reasons.

The majority declines to review the provisions of 32 V.S.A. § 3802(4), which, as the opinion points out, exempts from taxation "Real and personal estate granted, sequestered or used for public, pious or charitable uses," on the grounds that the parties agreed on appeal (the reason for such a concession by the defendant escapes me) that § 3802(4) was applicable, and therefore, without more, the subject property is entitled to an exemption.

In my judgment, the provisions of this statutory subdivision, if addressed, would be dispositive of this case in favor of the defendant. Because the interests of a large group of individual taxpayers, as distinguished from the City of Burlington considered as a legal entity, are being adversely affected by today's result, I believe the Court should have considered the application of § 3802(4) sua sponte. The failure to do so frustrates the intent of the legislature as this Court construed that intent in *Brattleboro Child Development, Inc.* v. *Town of Brattleboro*, 138 Vt. 402, 416 A.2d 152 (1980), and thus frustrates justice under the statute. As any instance of a tax exemption necessarily must, it increases, to a greater or lesser degree, the oppressive and continually increasing tax burden imposed on municipal home owners, businesses, great and small, and others who own real property.

Ordinarily, I would agree that this Court should not consider an issue which is waived by both parties, even though it was raised below, particularly when the interests of the people, other than the litigants, considered as individuals, are not adversely affected. I would agree also that, in rare instances, the law itself may preclude the courts from effecting complete justice. See *Roy's Orthopedic, Inc.* v. *Lavigne*, 145 Vt. 324, 487 A.2d 173 (1985); *State* v. *Fayen*, 138 Vt. 545, 418 A.2d 866 (1980). In *Fayen*, the per curiam opinion noted, with some asperity, that "the ends for which our system of justice was created" had been "thwarted." *Id.* at 546, 418 A.2d at 867. In the instant case however, there is nothing in the law which compelled the majority to ignore a valid issue under the controlling statute.

This Court has held that, even when a claim is *not* made below, if a particular " 'question is of such a nature that the present wel-

fare of the people at large, or a substantial portion thereof, is involved . . . the court is authorized in its discretion to direct its attention to the general welfare, rather than the interest of the parties to the immediate cause.' " *State* v. *Cain,* 126 Vt. 463, 470, 236 A.2d 501, 506 (1967) (quoting 5 Am. Jur. 2d *Appeal and Error* § 551, at 36). The fact that the defendant's legal or executive officials made an error in statutory construction, which adversely affects those they represent, is not so irreversibly binding on the courts that no remedy can be provided. If this Court can, in a proper case, consider issues that were not even raised below, *id.,* I am not aware of any obstacle to a review of the § 3802(4) question in this case. To do so would have been in the interests of people who share the onerous tax burden already imposed upon them. In my view, the majority has failed in its ultimate responsibility to do justice to the people of Burlington in refusing to consider the public interest in the instant case.

The comments above would not be warranted if they were no more than an abstract discussion of judicial duties. That is not the case here, for not only should the majority have considered sua sponte the question of whether plaintiff qualified for an exemption under 32 V.S.A. § 3802(4), but the result would have been such a clear reversal that a remand for further proceedings would not be justified; we could have entered judgment in this Court for the defendant. In a legal sense, as this Court has, itself, construed the controlling statute, the plaintiff's property is not "used for public, pious or charitable uses." Therefore it is not entitled to an exemption.

It is fundamental to the process of construing statutes granting exemptions from taxation that "existing circumstances"—here, the oppressive and increasing public tax burden—are recognized by the courts as an aid in determining the intent of the legislature. The "application [of a statute] to existing circumstances may be considered." *Notte* v. *Rutland Railroad,* 112 Vt. 305, 308, 23 A.2d 626, 627 (1942). This premise, applied to § 3802(4), provides support for my position here under the additional rule that statutory exemptions from taxation are to be *strictly* construed in favor of the taxing authority, and *against* the party claiming the exemption; that is, against the exemption. *Broughton* v. *Town of Charlotte,* 134 Vt. 270, 272, 356 A.2d 520, 522 (1976). Doubts are to be resolved against the exemption. *Id.*

The test applied in our prior cases in determining if the use of real property is for a public purpose is whether the service provided by the owner of the property is a service which the municipality would otherwise be called upon to furnish. In other words, whether (in this case) the plaintiff "assume[s] a burden of the municipality to provide any service which either the municipality or the legislature has determined to be an essential governmental function . . . ." *Ski-Lan Gymnastics* v. *City of Rutland,* 143 Vt. 294, 295, 465 A.2d 1363, 1364 (1983).

It is too clear to require any extensive discussion that plaintiff does not satisfy this key test. Nevertheless, illustrative of the point is *Brattleboro Child Development, Inc.* v. *Town of Brattleboro, supra,* in which this Court affirmed the trial court's finding that the service provided by the plaintiff corporation in that case did not fall within the meaning of the phrase "public purpose," even though the benefit to the public as a result of that service was more urgent and immediate than the services provided by the plaintiff in the instant case. The service furnished in the *Brattleboro* case was day care for the children of working parents. There is a crying public need for such facilities today in cases where both parents must work, and equally so in instances where a single parent is involved.

I do not question that the family planning and related services provided by the plaintiff here are carried out in conformity with the highest standards applicable to such services and are considered desirable by those who use them. Nevertheless, the needs of working parents for some form of extra-familial child care are generally *essential* to the continuing economic stability and general welfare of the family unit; professional family planning assistance, on the other hand, does not present an equivalent public urgency or immediacy in the same *sine qua non* sense.

In any case, the defendant city is not required to provide family planning or to offer such programs through any of its agents or facilities. "[P]laintiff has assumed no burden of the municipality which the legislature has determined to be an essential governmental function." *Ski-Lan Gymnastics, supra,* at 297, 465 A.2d at 1365 (citing *Brattleboro Child Development, Inc., supra,* at 406, 416 A.2d at 155).

Finally, in *Brattleboro Child Development,* we cautioned against intermeddling by the courts in a legislative function: "To do so would impose judicially a theory of socioeconomics not

sanctioned by the legislature." *Id.* at 407, 416 A.2d at 155. However, that too is implicit in the majority decision.

Summarizing the above discussion, I feel, first, that since tax paying property owners of the City of Burlington, *as individuals,* as well as all of its other citizens, are required to support the extensive services which local government *must* provide (including police, fire, water and sewer, schools, among many others), the Court should have taken cognizance of the "public use" issue. We should not force the people as a whole to suffer the adverse consequences of tax losses resulting from erroneous decisions by officials when it is in our power to review the issue sua sponte.

Secondly, the services provided by the plaintiff are not "public" within the meaning of 32 V.S.A. § 3802(4) as that statute has been construed by our own decisions in the recent past. The unfortunate "waiver" mistake should not be protected by ignoring it in a case such as this in which the welfare of the people is so clearly involved. By relying on a mere technicality, the majority sanctions a benefit to the plaintiff, to which it is not entitled under the law, at the expense of the public at large. This is result-oriented and contrary to the intent of the legislature and an injustice to the people of Burlington.

I disagree also with the trial court and the majority on the second issue which is raised under 32 V.S.A. § 3832. However, it does not seem necessary to prolong this discussion by an extensive recitation of my reasons. The most egregious fault on the part of the majority lies in its refusal to review the issue of public use. On that question alone I would reverse and enter judgment for the defendant.

I am authorized to state that Justice Daley joins with me in this dissent.