## Kingsland Bay School, Inc. v. Town of Middlebury

[569 A.2d 496]

No. 88-099

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed December 1, 1989

*Richard F. Taylor,* Middlebury, for Plaintiff-Appellee.

*Chester S. Ketcham,* Middlebury, for Defendant-Appellant.

**Gibson, J.** Defendant Town of Middlebury (Town) appeals an Addison Superior Court order declaring that plaintiff Kingsland Bay School, Inc. (Kingsland) is exempt from property tax pursuant to 32 V.S.A. § 3802(4) and 32 V.S.A. § 3832(7). We affirm.

### I.

The facts are not in dispute. Kingsland is a nonprofit corporation which operates a group home on property it owns in Mid-

dlebury. Pursuant to one-year contracts with the State of Vermont, Department of Social and Rehabilitation Services (SRS), Kingsland provides residential services for up to five sixteen-to-eighteen-year-old adolescents experiencing social and emotional difficulties. Generally, only adolescents placed in state custody by the courts are referred to Kingsland; however, Kingsland is not equipped to handle criminal, pyschotic, addicted, or retarded individuals. SRS and Kingsland jointly determine which individuals are appropriate for placement at Kingsland. The State may terminate the contract with Kingsland upon thirty-days' notice if, for three consecutive months, or for four of six consecutive months, occupancy is less than 85% of the maximum.

The stated purpose of Kingsland is to provide residential services in a therapeutic milieu for adolescents with major life-adjustment problems. Kingsland focuses on preparing residents for independent living by teaching such things as budgeting, nutritional, academic, and vocational skills. In addition, it helps residents obtain a G.E.D. or high school diploma, procure a driver's license, manage conflicts, and deal with authority so that the youths can eventually function as responsible citizens independent of state support. Kingsland offers neither in-house counseling nor in-house treatment for special physical or mental health problems. Instead, residents are required to attend outside counseling sessions for at least thirteen weeks while attending Kingsland, and outside providers treat residents for specific physical or mental illnesses.

Kingsland acquired the property in July of 1984 and refused to pay real estate taxes thereafter despite the fact that the previous owners, who had leased the property to Kingsland for use as a group home, never claimed a tax exemption. Real estate taxes assessed on the property from 1985 through 1987 totaled approximately $4,800. In April of 1986, Kingsland commenced a declaratory judgment action seeking tax-exempt status for the school. On January 21, 1988, the trial court declared the property to be exempt from taxation under 32 V.S.A. § 3802(4) and not subject to the provisions of 32 V.S.A. § 3832(7).

On appeal, the Town contends that the court erred in concluding that (1) the use of the property served a public function and was therefore exempt from real estate taxes under 32 V.S.A. § 3802(4); and (2) a town vote under 32 V.S.A. § 3832(7) was not required in order to accord the property tax-exempt status because Kingsland's primary purpose was to provide residential services rather than health-related services. We disagree with both contentions.

## II.

The Town first argues that 32 V.S.A. § 3802(4) does not afford Kingsland tax-exempt status. 32 V.S.A. § 3802(4) provides, in part, that "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses" is exempt from taxation. Recently, in *American Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 557 A.2d 900 (1989), this Court reviewed Vermont case law interpreting the "public use" component of § 3802(4). Based on that case law and the statutory language of § 3802(4), we clarified the "public use" test by rejecting the "essential governmental function" aspect of the test that had arisen in recent cases, and by specifying the elements of the test:

> (1) the property must be dedicated unconditionally to public use;
> (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served; and
> (3) the property must be owned and operated on a not-for-profit basis.

*American Museum of Fly Fishing, Inc.*, 151 Vt. at 110, 557 A.2d at 904.

We address the second and third elements of the "public use" test first, as they require less discussion in the instant case. The fact that Kingsland is a nonprofit organization is undisputed. Furthermore, the primary use of the property directly benefits an indefinite class of persons as well as the public in general. This Court has described a definite class as "a group deter-

mined by choice or selection [implying] some kind of voluntary action or judgment." *New York Inst. for the Educ. of the Blind v. Town of Wolcott*, 128 Vt. 280, 286, 262 A.2d 451, 455 (1970). Accordingly, Peace Corps trainees and Boy Scouts are members of a definite class, *Experiment in Int'l Living, Inc. v. Town of Brattleboro*, 127 Vt. 41, 48, 238 A.2d 782, 786–87 (1968); *Fort Orange Council, Inc. v. French*, 119 Vt. 378, 384, 125 A.2d 835, 839 (1956), while blind children are not, *New York Inst. for the Educ. of the Blind*, 128 Vt. at 286–87, 262 A.2d at 455. In the instant case, the troubled adolescents do not become residents of Kingsland as a result of any voluntary action or judgment on their part. Nor are they selected solely by Kingsland; they become residents based on the joint determination of Kingsland and the contracting agency that Kingsland is capable of providing the appropriate services for them. Cf. *Experiment in Int'l Living*, 127 Vt. at 47–48, 238 A.2d at 786 (students selected solely by contracting agency). As in *New York Institute*, the purpose of Kingsland is to help adolescents without "any other limitation except for the capacity of its facilities." 128 Vt. at 286, 262 A.2d at 455. Consequently, those eligible for resident status at Kingsland constitute an indefinite class of persons.

Relying heavily on language in *Brattleboro Child Development, Inc. v. Town of Brattleboro*, 138 Vt. 402, 416 A.2d 152 (1980), that was explicitly overruled by *American Fly Fishing*, the Town denies that a general societal benefit results from a benefit directly conferred on an indefinite class. See *American Museum of Fly Fishing, Inc.*, 151 Vt. at 107, 110–11, 557 A.2d at 903, 905; *Brattleboro Child Dev.*, 138 Vt. at 405–06, 416 A.2d at 154. The Town argues that Kingsland must assume a municipal burden of providing a service which the Legislature has determined to be an essential governmental function in order to secure tax-exempt status. As we noted in *American Fly Fishing*, "such a criterion unjustifiably narrows the basis for which tax-exempt status as a public use under § 3802(4) may be claimed." *American Museum of Fly Fishing, Inc.*, 151 Vt. at 107, 557 A.2d at 903. In order to confer a benefit on the public, one need not perform an essential municipal service required by the State. For instance, this Court refused to grant tax-ex-

empt status to a center which taught English to foreign students, and distinguished *New York Institute* as follows:

> The declared purpose of the Institute was the education of members of the public who, because of blindness, needed specialized training in order to lead a more normal and useful life. . . . The Institute provided services that might otherwise have been required of the State of Vermont, and its services were financed in part with State funds. There was no question that the Institute's activities were essentially public in character.

*English Language Center, Inc. v. Town of Wallingford*, 132 Vt. 327, 330–31, 318 A.2d 180, 183 (1974). Like the Institute in the aforementioned case, Kingsland aided the State by providing training to individuals that needed specialized instruction, and thereby plainly conferred a benefit on the public.

The first criterion of the "public use" test is that property must be dedicated unconditionally to a public use. This criterion assures that the use directly benefits the public without requiring the onerous burden of showing that the use in question assumes an essential municipal function. "[T]he governing consideration is the direct and immediate, rather than the remote or incidental, benefit derived from the use of the property." *Vermont Wild Land Found. v. Town of Pittsford*, 137 Vt. 439, 444, 407 A.2d 174, 177 (1979). Accordingly, in *Vermont Wild Land*, we denied tax-exempt status for a tract of undeveloped wilderness where the foundation in control of the land restricted access to a limited number of approved researchers. *Id.* at 441–42, 407 A.2d at 176. As a result of the strict conditions imposed on use of the land, the benefit to the public was secondary and remote compared to the benefit conferred on a small group of researchers. *Id.* at 444, 407 A.2d at 177.

In the instant case, the record demonstrates that the Kingsland property is unconditionally dedicated to a public use. The instruction and education given to the Kingsland residents directly benefits the public by providing humanitarian services supported by the State, see *Broughton v. Town of Charlotte*, 134 Vt. 270, 275, 356 A.2d 520, 523 (1976), and by assisting residents to become capable members of society. Moreover, the

fact that Kingsland's state contract may be terminated on thirty-days' notice does not make Kingsland's use of the land conditional. The record indicates that the property has served as a group home since at least 1983 when the Middlebury Board of Zoning Adjustment granted Kingsland a use permit with the understanding that its property was to be used as a group home. In any event, the tax-exempt status of the property is subject to reevaluation on an annual basis; the town listers are responsible for recording the fair market value of property as of April 1 of each year in the municipality's grand list. See 32 V.S.A. §§ 3651, 4041.

 Tax exemptions are strictly construed against those claiming them; nevertheless, we will not construe the "public use" exemption so strictly as to exclude all public uses not assuming mandated governmental services. *American Museum of Fly Fishing, Inc.*, 151 Vt. at 110, 557 A.2d at 905. The Kingsland property meets the "public use" test articulated in *American Fly Fishing*.

### III.

The Town argues that 32 V.S.A. § 3832(7) precludes Kingsland's tax-exempt status even assuming that the property has been put to a "public use." 32 V.S.A. § 3832(7), in part, provides:

> The exemption from taxation of real . . . estate . . . used for public . . . uses shall not be construed as exempting: . . . (7) Real and personal property of an organization when the property is used primarily for health or recreational purposes, unless the town or municipality in which the property is located so votes . . . .

The Town relies on *Fletcher Farm, Inc. v. Town of Cavendish*, 137 Vt. 582, 409 A.2d 569 (1979), to support its contention that plaintiff is primarily a provider of health services. In *Fletcher Farm*, we denied tax-exempt status for buildings leased to Mental Health Services of Southeastern Vermont, Inc. for an alcoholic treatment and rehabilitation center because the use of the buildings was deemed to be primarily health-related. *Id.* at 585, 409 A.2d at 570–71. On the other hand, Kingsland cites

*Planned Parenthood of Vermont, Inc. v. City of Burlington,* 146 Vt. 348, 503 A.2d 545 (1985), in support of its contention that it is not primarily a provider of health services. In *Planned Parenthood,* we upheld the tax-exempt status of a family-planning center despite the fact that a minor part of the center's activities involved physical examinations, diagnosis, and even surgery. *Id.* at 351, 503 A.2d at 547. We based our decision on the fact that the center's primary activities involved family planning rather than the treatment of health problems, and that family planning did not fit within the plain meaning of the word "health." *Id.* at 352, 503 A.2d at 547. We stated that defining "health" so broadly as to include physical, spiritual, and emotional well-being would be "absurd and irrational" and "could lead to the incorporation of virtually any public activity within the scope of health-related activities." *Id.* at 352, 503 A.2d at 547–48.

The instant case is more analogous to the circumstances in *Planned Parenthood.* Kingsland's primary mission is to prepare troubled youths for assimilation into society, not to treat specific physical or mental problems. Indeed, any special physical or mental problems that afflict Kingsland residents are treated by outside providers; even counseling sessions take place outside the group home. Thus, Kingsland is primarily a provider of residential and instructional services rather than health services, and, as such, is not subject to the provisions of § 3832(7).

*Affirmed.*

**Peck, J.,** concurring. I agree with the result reached in this case by the Court. I write separately, however, because I disagree strongly with the rationale relied on in the opinion to support the conclusion.

I concur with the result only because, in my judgment, the use to which the subject property is presently dedicated satisfies the "governmental function" test established in *Brattleboro Child Development, Inc. v. Town of Brattleboro,* 138 Vt. 402, 416 A.2d 152 (1980), as the standard to be satisfied for a "public use" tax exemption under 32 V.S.A. § 3802(4). I reach this conclusion because the service provided by plaintiff is done on be-

half of a state governmental (public) agency: the Department of Social and Rehabilitation Services (SRS) under a contract with that agency.

As the majority opinion points out, *Brattleboro* was over-ruled, most inadvisedly in my view, by *American Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 557 A.2d 900 (1989). In that case, the majority rejected the governmental function standard as too narrow and, in its place, adopted a confusing three part test, set forth by the majority in *Fly Fishing* and reiterated by the majority in this case:

(1) the property must be dedicated unconditionally to public use;

(2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served; and

(3) the property must be owned and operated on a not-for-profit basis.

Because the matter before us satisfies this tripartite test, the majority opinion affirms the trial court's decision that the property used by plaintiff is entitled to a tax exemption as being dedicated a public use.

I dissented in *Fly Fishing*, objecting to the three part test as well as the result. However, in this case, since I concur in the result, a dissent is not appropriate. Nevertheless, since I am still completely convinced that the three part test is not only wrong, but confusing and creates a hopeless muddle; accordingly, the appropriate resort is to a concurring opinion.

I will not go into the detail of my objections to the three part test here. They are set out in length in my *Fly Fishing* dissent. Rather, I will simply highlight some of the points made in my earlier opinion.

The three part test violates the rule that it is to be presumed that words in a statute are employed advisedly and are to be given effect. The three part test admits of no clear distinction between the three uses, public, pious, and charitable, which may qualify property for exemption under § 3802(4). The majority opinion, then and now, makes no definitional distinctions,

although in the absence of definition, words in a statute are to be given their common meaning.

The *Fly Fishing* test permits almost every conceivable type of business which is open to the public without selection or limitation to qualify for a property tax exemption; grocery and clothing stores come to mind as clear examples. Such businesses need do no more than organize or reorganize on a nonprofit basis. This should have a particular appeal for small business; salaries will continue, and the business itself may realize a profit, as do many nonprofit corporations.

The above opens the door to a continuing nibbling away at municipal property revenues, and contributing even further to tax increases, already a serious problem in many, if not most, Vermont communities.

The now defunct governmental function test related to the "public use" segment of the statute and set it apart from "pious" and "charitable," thus giving effect to each of these statutory words.

It will be a morbidly amusing experience, what is known in theater as "black comedy," to observe this Court, as it backtracks and struggles to create elaborate distinctions, if and when some of the potential situations created by the three part standard are tested. In the meantime, I remain convinced that the "governmental function" test of *Brattleboro* and other cases is and should remain the logical and reasonable interpretation of the statutory "public use" exemption. It should be reinstated.