EAST BOSTON COMPANY vs. COMMONWEALTH.

Suffolk.    March 25, 1909. — June 23, 1909.*

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Land Court*, Master, Appeal. *Election. Flats. Seashore. Noddle's Island.*
*Words,* "Belong to," "Ordinary low water mark."

Comment by KNOWLTON, C. J., on the functions of a master appointed by a judge of the Land Court under R. L. c. 128, § 35, upon an application for the registration of a title.

Where under R. L. c. 128, § 35, a judge of the Land Court upon a petition for the registration of a title appoints a master, who makes a report of his determination of the facts, and exceptions are taken to his findings, which are considered and passed upon by the judge, if a party who took such exceptions appeals from the decision of the judge to the Superior Court for a trial by jury upon the facts, for which issues are framed, the facts are determined finally by the jury, and the party who has taken the appeal cannot afterwards rely on his exceptions to the findings of the master. Having made his election to have a trial by jury on an appeal, he must see that the issues are framed in such a way as to cover all the material facts that he raised by his exceptions.

The vote of the General Court on March 13, 1640, "It is declared, that the flats round about Nodles Iland do belong to Nodles Iland to the ordinary lowe water marke," was a grant of the fee of such flats to the persons who owned that island under previous grants to Samuel Maverick.

In interpreting the phrase "ordinary low water mark," where the distinction intended is between the extreme low water mark and the ordinary or common line of low water, having reference to all times and all seasons, the only way of reaching a correct result is to take the average of the low tides, which gives the line of mean low water.

At the trial of an appeal from a judgment of the Land Court, upon a petition for the registration of a title to lands, consisting of flats lying easterly and southerly of the upland that formerly was called Noddle's Island and now is called East Boston, the claim of the petitioner to the flats was founded upon a vote of the General Court passed on March 13, 1640, as follows : "It is declared, that the flats round about Nodles Iland do belong to Nodles Iland to the ordinary lowe water marke." The petitioner introduced evidence tending to show that in 1640 the colonists intended by "ordinary lowe water marke" the extreme low water mark, that is, the lowest point to which the tide ever ebbs in the normal, regular periodical succession of the tides. On issues presented to them the jury found that the word "ordinary" as used in the colony order above quoted was not "affected by any usage sufficiently general and definite to fix its sense in said order as the line of the lowest spring tides due to natural tidal causes uninfluenced by storms." The jury also found on other issues presented to

---

* The opinion in this case was withdrawn temporarily, and was returned to the Reporter on September 8, 1909.

them that there was no contemporaneous construction of the colony order by both parties nor any later mutual construction of the order by which the flats were included at least as far out as the present line of extreme low water.   They also found that " the facts necessary to constitute an estoppel against the Commonwealth in reference to the petitioner's claim to the flats, at least as far out as the present line of extreme low water," did not exist.   It appeared that since 1830 there had been a subsidence of the upland amounting to seventy-nine one hundredths of a foot, affecting to that extent, as nearly as could be ascertained, 'the line of mean low water.   Upon the facts found by the jury the presiding judge ruled that " the ordinary lowe water marke " meant in 1640 the same as the line of " mean low water," as these words now are used.   He ruled also that the petitioner was not entitled to an allowance for the subsidence of the land, which had made the mean low water mark of the present day higher than the ordinary low water mark of 1640, the change having come gradually from natural causes, when there were no marks or boundaries to show exactly what was the line of mean low water in 1640 or at any later date.   *Held*, that the rulings of the judge were correct.

Under the rules of law applying to accretion and erosion and to the elevation and subsidence of land affecting the water line along the shore of the sea, where the change comes gradually from natural causes and is shown by no marks or boundaries, the line of ownership follows the changing water line.

KNOWLTON, C. J.   This is a petition for registration of a title to lands, consisting of flats lying easterly and southerly of the upland that was formerly called Noddle's Island, and is now East Boston.   The petitioner has succeeded to the title of Samuel Maverick, which was created by colonial orders, the first of which was by the Court of Assistants, under date of April 1, 1633, as follows : " Noddle's Island is granted to Mr. Samuel Maverick to enjoy to him and his heirs forever, yielding and paying yearly at the General Court, to the Governor for the time being, either a fat wether, a fat hog, or forty shillings in money, and shall give leave to Boston and Charlestown to fetch wood continually, as their need requires, from the southern part of the said island." *   1 Mass. Col. Rec. 104.   At a session of the General Court on March 9, 1636–7, there was this vote : " Nodles Iland is layd to Boston."   1 Mass. Col. Rec. 189.   On March 13, 1640, at the session of the General Court, was this action : " It is declared, that the flats round about Nodles Iland do belong to Nodles Iland to the ordinary lowe water marke."   1 Mass. Col. Rec. 291.   By an order of the General Court on February 7, 1682–3, the rent reserved in the

---

* In printing this quotation the original spelling has not been retained.

grant of 1633 was remitted to Samuel Shrimpton, then the owner in fee.

The principal questions in the case are whether the above quoted order of 1640 was a grant of the flats to Samuel Maverick, then the owner of the fee in the island, and, if so, whether it included all the flats to extreme low water mark, or extended only to a line corresponding to the present line of mean low water, or to some other line of low water.

The case was referred to a master * under the R. L. c. 128, § 35, who heard the parties at great length in support of their respective contentions, and considered an array of references to books, records, documents and papers, English and American, bearing upon the construction to be given to the principal order in question, which shows investigation and research almost, if not quite, unequalled in any case ever tried in the courts of Massachusetts. In his report the master discussed with great clearness and ability the numerous contentions of the parties, and particularly the great variety of considerations urged by the counsel for the petitioner in support of their construction of the order. He concluded that this order was a grant of the flats to Maverick, and that the grant extended to the line of mean low water, and that since 1830 there has been a subsidence of the land amounting to seventy-nine one hundredths of a foot, affecting to that extent, as nearly as can be ascertained, this line of mean low water. Exceptions to the report were taken by both parties. The Land Court made a decision in accordance with the findings of the master, and the petitioner appealed to the Superior Court under the provisions of the R. L. c. 128, § 13, as amended by the St. 1905, c. 288. This appeal was for a trial of the facts by a jury, and issues were accordingly framed in the Land Court for this trial. St. 1905, c. 288. R. L. c. 128, § 13. *Luce* v. *Parsons,* 192 Mass. 8. *Dunbar* v. *Kronmuller,* 198 Mass. 521. This is a peculiar method of procedure, provided by the statute, in a case where a master is appointed upon an application for the registration of a title.

The appointment of a master is for the determination of the facts. Exceptions to his findings may be taken, and they are then

* Hon. James R. Dunbar.

considered by the court.   But in this proceeding, a party may take an appeal from the decision of the judge, for a trial by jury upon the facts.   If he does this, issues are framed, and the facts are finally determined by the jury.   Questions of fact which are raised by the appealing party by exceptions to the master's report cannot afterwards be considered by the judge on the exceptions, when the party has elected to have a trial by jury on an appeal.   Upon such an election, issues should be framed to cover all the material questions of fact that he raised by his exceptions.

In the present case the jury found for the Commonwealth upon all the issues submitted to them, so that the facts before us are those included in these findings, and in the others stated in the report of the master, all of which were subsequently affirmed by the findings of the judge of the Land Court,* together with certain formal additions stated in the report, the materiality of which he did not pass upon.   This report of the judge presents for our consideration only questions of law.   He had no jurisdiction to report anything but questions of law in such a case, with such facts as are necessary to the understanding of them.   R. L. c. 128, § 13.   St. 1902, c. 458.   These arise upon the rulings and refusals to rule set out in the report.

The principal question raised by the Commonwealth is whether the order relied on is a grant of the flats.   Upon the master's findings of fact in regard to the methods of creating titles to real estate in the early years of the colony, we think his conclusion and the rulings of the judge on this subject are correct.   The master finds that the title to much of the land in eastern Massachusetts is derived from orders of the General Court or the Governor and Assistants.   Such orders are usually very informal, and they differ greatly in their terms.   He quotes from many orders in which the words shall " belong to " are the operative language, showing future ownership.   After considering the various contentions of the Commonwealth on this point, he concludes that this order of 1640 " was not solely jurisdictional; " but that whether it was or was not intended to be jurisdictional, it was " a grant of the fee of certain flats."   In *Commonwealth* v. *Roxbury*, 9 Gray, 451, 459, and the note to

---

* *Jones, J.*

the same case at page 512, and in *Boston* v. *Richardson*, 105 Mass. 351, 359, there are expressions of opinion to the same effect in regard to the construction of this order, and these opinions of eminent judges are entitled to very great weight.

On the question what level is meant by the "ordinary low water mark," a great many considerations both of law and of fact were presented to the master, and were before the judge of the Land Court.

The quoted words suggest at once a distinction between the line indicated and absolute low water mark, or extreme low water mark. The language is "ordinary" low water mark, which seems to imply that there is some recognized line to which the tide usually ebbs. But the evidence shows that this is not the fact. The line of low water, like the line of high water, is gradually and constantly changing from day to day in different parts of the month, and in different parts of the year, from the highest spring tides to the lowest neap tides. If the distinction intended is between the extreme low water mark and the ordinary or common line of low water, having reference to all times and all seasons, the only way of reaching a correct result is to take the average of the low tides, which gives us the line of mean low water. The use of the word "ordinary" distinguishes this grant from the Colonial Ordinance of 1647, which extends the line of individual ownership as far as the tide ebbs, if that point is not more than one hundred rods from ordinary high water mark. For reasons stated in the decisions, this means the line of extreme low water shown at an ebb of the tide, resulting from usual causes and conditions. *Wonson* v. *Wonson*, 14 Allen, 71, 82.

As showing that the word "ordinary," when applied to a high or low water mark, has generally been used in the sense of average by the courts of this country and of England, the master cited in his report the following cases, among others: *Storer* v. *Freeman*, 6 Mass. 435. *Porter* v. *Sullivan*, 7 Gray, 441, 443. *Sewall & Day Cordage Co.* v. *Boston Water Power Co.* 147 Mass. 61, 64. *Commonwealth* v. *Charlestown*, 1 Pick. 179, 182. *Wonson* v. *Wonson*, 14 Allen, 71, 82. *Hunt* v. *Commonwealth*, 183 Mass. 307. *Attorney General* v. *Chambers*, 4 DeG., M. & G. 206. *French* v. *Bankhead*, 11 Gratt. 136, 160. *New Jersey Zinc &*

*Iron Co.* v. *Morris Canal & Banking Co.* 17 Stew. 398, 401, *State* v. *Pinckney,* 22 S. C. 484, 492. *United States* v. *Pacheco,* 2 Wall. 587, 590. *Shively* v. *Bowlby,* 152 U. S. 1, 13. *Church* v. *Meeker,* 34 Conn. 421, 424. *Mather* v. *Chapman,* 40 Conn. 382, 394. *Providence Steam-Engine Co.* v. *Providence & Stonington Steamship Co.* 12 R. I. 348, 357. *Bell* v. *Gough,* 3 Zabr. 624. *American Dock & Improvement Co.* v. *Trustees of Public Schools,* 12 Stew. 409, 413. There is also much support for this doctrine among text writers, English and American.

The petitioner introduced a great deal of evidence which it relied upon, tending to show that in 1640 the colonists intended by " ordinary lowe water marke" the extreme low water mark, that is, the lowest point to which the tide ever ebbs in the normal, regular periodical succession of the tides, not the line made by some extraordinary low tide caused by the accidental coincidence of the low spring tide and storm. It contended that the ordinary interpretation and meaning of this language when it was first used in the order was more favorable to the petitioner's contention than the meaning that has often been given to similar language by the courts in recent years. The master found that this contention was not sustained, and afterwards the jury, on the trial of issues, answered " No," to each of the following questions: 1. " On May 13, 1640, was the word 'ordinary' when used with reference to low water mark as in the Colony Order of that date, to wit: ' It is declared, that the flats round about Nodles Iland do belong to Nodles Iland to the ordinary lowe water marke' affected by any usage sufficiently general and definite to fix its sense in said order as the line of the lowest spring tides due to natural tidal causes uninfluenced by storms?" 2. " Was there a contemporaneous construction of the order of May 13, 1640, by both parties as including the flats at least as far out as the present line of extreme low water?" 3. " Has there been any period or periods of time from the date of the Order of May 13, 1640, down to the time when the dispute arose which resulted in the present litigation during which both parties, that is to say, the Government or Governments of Massachusetts on the one side and the petitioner or its predecessors in title on the other side mutually construed the Order of May 13, 1640, to include the flats at least as far out as the pres-

ent line of extreme low water? If this question is answered in the affirmative state when and how long such period or periods were." 4. "Do the facts necessary to constitute an estoppel against the Commonwealth in reference to the petitioner's claim to the flats, at least as far out as the present line of extreme low water, exist?"

Most of the very large amount of evidence from books and records and papers, introduced by the petitioner, bears upon the facts which are settled by the findings of the master and the jury, and afterwards by the affirmation of the judge. Both the law and the facts are discussed at great length in the master's report. It would be impossible to consider and discuss, within the proper limits of an opinion, the numerous propositions and arguments presented by the petitioner. The decision turns very largely upon matters of fact which furnish grounds for a great variety of arguments for the contradictory contentions of the opposing parties. It would be unprofitable to attempt to state at length these arguments and our reasoning in regard to them.

The petitioner's requests for rulings at the final hearing before the judge of the Land Court were seventy-four in number. It is unnecessary to consider them in detail. The judge refused them only so far as they were inconsistent with his action in affirming the findings and rulings of the master, except in so far as the master's findings of fact were qualified by the verdict of the jury and by the judge's findings stated in the report, and so far as they were inconsistent with his action in overruling the exceptions of both parties to the findings and rulings of the master. This action renders many of these requests immaterial. Many others relate to incidental and evidential matters upon which the judge was not called upon to rule. The petitioner was not prejudiced by the refusal.

Upon the facts found, the judge made no error of law in holding that " the ordinary lowe water marke" meant in 1640 the same as the line of " mean low water," as these words are now used, and that an allowance of seventy-nine one hundredths of a foot below the mean low water mark of the present day, for the subsidence of the land since 1830 gives, as nearly as it can be ascertained, the ordinary low water mark of 1640. He was

also correct in declining to give the petitioner the benefit of such an allowance. The change came gradually from natural causes, when there were no marks or boundaries to show exactly what was the line of mean low water in 1640, or at any later date. Upon the doctrines applying to accretion and erosion and to the elevation and subsidence of land affecting the water line along the shore of the sea under conditions like these, the line of ownership follows the changing water line.

> *Decree for the petitioner in accordance with the order recited by the judge in the report.*

*N. Matthews,* (*W. G. Thompson & G. E. Kimball* with him,) for the petitioner.

*R. G. Dodge,* (*J. F. Curtis* with him,) for the Commonwealth.