# State of Vermont v. L. John Cain and Norman A. Burnett

[ 236 A.2d 501 ]

June Term, 1967

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed October 3, 1967

Reargument Denied November 21, 1967

*James L. Oakes,* Attorney General, and *Albert D. Pingree,* Assistant Attorney General, for the State.

*Donald E. O'Brien* for defendants.

**Smith, J.** The defendants own a tract of land in the Town of Colchester, bounded westerly by Lake Champlain, near to where the water of the Winooski River flows into the lake. In the latter part of 1966, the defendants started to place land fill, in the form of a dike, in that portion of the lake immediately in front of their shore property, with the intention of filling in behind the dike and creating usable land adjacent to the present usable land area owned by them.

The State of Vermont brought an action in the Chittenden County Court of Chancery, alleging that the land fill of the defendants was being placed in the public waters of the State, and seeking an injunction preventing the defendants from proceeding with their operation.

In its complaint, the State stated that the public waters involved were those of Lake Champlain, meaning the waters "beyond and below the low water line thereof." Upon hearing below, the parties agreed that there was only one material question for the determination of the Chancellor, and such question is set forth in No. 4 of the Findings of Fact: "The parties are in agreement, and the Court finds, that the only material question for the Court's determination is the fixing from a physical standpoint of the 'ordinary low water mark' of Lake Champlain, since this mark, under *McBurney* v. *Young*, 67 Vt. 574 [32 A. 492, 29 L.R.A. 539], is the boundary line between the public lands underlying the lake and the riparian lands of the defendants."

The record below establishes that almost the entire evidence of both parties was directed toward defining and establishing the "ordinary low water mark" of Lake Champlain. The Chancellor did not adopt the definition or the physical "average low water mark" advocated by either party. Proceeding on a computation of his own devising, the Chancellor found the "average of the lowest levels reached by Lake Champlain" to be 93.417 feet above mean sea level. (F. 9.)

The concluding finding of the Chancellor was that he "was unable to find that the defendants have placed any land fill in the public waters of the state (*i.e.,* Lake Champlain) or are threatening to do so, or that they have committed, or threaten to commit, trespass or public nuisance upon lands of the State."

In its appeal here, the State has briefed its exception to Finding 9, on the ground that the Chancellor did not find the "average low water mark" of the lake, the question for determination, by his finding of the "average of the lowest levels reached by Lake Champlain," as well as to the negative finding (F. 10) that the defendants had placed no fill in public waters, or trespassed upon lands of the State.

But the real relief here sought by the State is a remand of the whole cause for a new hearing on the ground that the key question in the cause was never reached by the parties, or the Chancellor, in the hearing below. The key question that should have been considered, now alleges the State, is the right of the public to use the overlying waters of Lake Champlain, regardless of the ownership of the bed of the lake under such waters.

We first turn to the exceptions of the State to the Findings of Fact to ascertain if this cause must be remanded in any event before considering the other relief here sought by the appellant.

The Chancellor did not, at least in so many words, ever determine the sole question for his determination below, which was the "fixing from a physical standpoint, of the 'ordinary low water mark' of Lake Champlain." He did determine the average of the lowest levels reached by Lake Champlain in a 37-year period was 93.417 feet above mean sea level. This figure was computed by taking the lowest water level reached by the lake in each year, and dividing the figure reached by the 37. It should be noted that drought years were not included in the computations of the Chancellor, or in those of either party.

The defendants contended that ordinary low water mark meant the lowest elevation point to which the lake had receded during the years examined (excluding drought years) and submitted a figure of 92.60 as the average low water mark of the lake.

The State contended that the term "ordinary low water mark" meant the low water level representing the arithmetic mean or average of all the daily water level readings below the mean lake level, as recorded over a period of years. The record discloses that this method of computation is the one used by both the State of New York, and the Commissioner of Water Resources for the State of Vermont in determining the ordinary low water level of Lake Champlain. The Chancellor found that in the use of this method of computation the ordinary low water level of the lake would be 94.32 feet above mean sea level; a point higher than the toe elevation of the dike of the defendants which the Chancellor found to be 93.75 feet above sea level.

In employing the phrase "ordinary low water mark" in *McBurney* v. *Young, supra,* this Court did not explicitly define the term used. The Supreme Judicial Court of Massachusetts was called upon to define this term in *East Boston Co.* v. *Commonwealth,* 203 Mass. 68, 89 N.E. 236, at p. 237. While the factual question before the Massachusetts court was as to the meaning of "ordinary low water mark" as applied to land abutting on salt water, we believe it to be equally applicable to the question presented here.

"The quoted words suggest at once a distinction between the line indicated and absolute low-water mark, or extreme low-water mark. The language is 'ordinary' low-water mark, which seems to imply that there is some recognized line to which the tide

usually ebbs. But the evidence shows that this is not the fact. The line of low water, like the line of the high water, is gradually and constantly changing from day to day in different parts of the month, and in different parts of the year, from the highest spring tides to the lowest neap tides. If the distinction intended is between the extreme low-water mark and the ordinary or common line of low water, having reference to all times, and all seasons, the only way of reaching a correct result is to take the average of the low tides, which gives us the line of mean low water."

The opinion also states that the word "ordinary" when applied to a high or low water mark, has generally been used in the sense of average in the courts of this country, and of England.

Lake Champlain is not subject to tidal action as in the case of the sea, but the evidence in the record below is undisputed that there is an almost daily variation in the level of the lake, and the reasoning above given is applicable. The Chancellor, in selecting the intermittent lowest levels over the 37-year period, ignored the ordinary mean low water mark in favor of the extraordinary low water levels, excluding drought years. This was in error.

By reason of his erroneous finding on the average low water mark of Lake Champlain, the negative finding of the Chancellor that he could not find that defendants deposited land fill in the public waters of the lake, or that they had trespassed or committed a public nuisance on the lands of the State in Finding 10, cannot be sustained. The Chancellor, in Finding 6, did determine the mean low water level of Lake Champlain, based on the State's evidence, as 94.32 feet. Based on this finding, it would be possible for us to enter a final decree here upon the theory on which the case was tried below, and direct the defendants to remove all fill which extends below this level into the lake, for the record affords the means of correcting the decree. *Doyle* v. *Polle,* 121 Vt. 335, 340, 157 A.2d 226.

But in the briefs and arguments before us, aspects of the case have been suggested which are not before us on the question presented from the hearing below. Therefore, we believe that to prevent an injustice, the case should be remanded for further proceedings. *Hinsman* v. *Marble Savings Bank,* 102 Vt. 217, 223, 147 A. 270. Although the paradoxical situation is presented that if we grant a

remand and rehearing on the grounds presented in argument here by the State for such entry, a redetermination of the "ordinary low water level" of the lake may not be an essential finding.

The importance given to the definition of "ordinary low water mark," and its physical determination by the Chancellor, was first created by the complaint of the State in this cause. In asking to have the defendants enjoined from placing fill in the public waters of Lake Champlain, the State defined such public waters as "meaning the waters of Lake Champlain, beyond and below the low water line thereof."

Then, at the time of hearing, the parties agreed that under *Mc-Burney* v. *Young,* 67 Vt. 574, 32 A. 492, 29 L.R.A. 539, the determination by the Chancellor of the physical low water mark of the lake, would also be a determination of the boundary between public and private lands underlying the bed of the lake.

In this agreement, the parties were in double error. First, *McBurney* v. *Young* did not determine the extent of the public waters of the lake, for the Court expressly stated in that case that they did not determine what right the public had to sail on waters between the high and low water marks of the lake, or the rights of the inhabitants of this State under the Constitution to use such waters, such decision not being necessary for the determination of the question then presented. All that was considered in the *McBurney* case was the boundary of lands bordering on Lake Champlain, and not the extent of the public waters of the lake.

The second error of the parties was in agreeing that the rule laid down in *McBurney* remained unchanged, or unmodified, by this Court, as determining the terminus of boundary of lands bounding on public water. In *McBurney,* it is apparent by a careful reading of the case that the Court then had in mind a low water mark "which could be readily ascertained and established." But in the later case of *Hazen* v. *Perkins,* 92 Vt. 414, at p. 419, 105 A. 249, at p. 251, 23 A.L.R. 748, the Court held:

> "Being public waters according to the test afforded by the Constitution, the grants of land bounding upon the lake pass title only to the water's edge, or to low-water mark if there be a definite low-water line."

In *Hazen* the Court did not change the rule laid down in *McBurney*, "if there was a definite low-water line" but such definite line was the boundary of lands bordering public water, but, in the absence of such definite low water line, the Court established the boundary mark of the lands bordering public waters as the water's edge.

The record of the case before us discloses no evidence was presented that there was a definite low water mark present on the shore line of the property of the defendants. On the contrary, all the evidence in the case was directed to establishing a mythical low water mark by mathematical computations.

We agree with the claim now made by the State in this Court that the case below was tried on a mistaken view of the law taken by the Court and the parties below, a mistake, however, induced by the State in its pleadings, its concession, and its presentation of evidence. The agreed question in the hearing below was only as to the limit of private ownership of land underlying the waters of the lake, but the question that should have been determined under the pleadings, was not the land ownership of the defendants underlying the lake, but the public ownership of the waters in which it was alleged that the defendants had placed fill.

The defendants have filed no brief of law in this Court to rebut the assertions and law cited by the State in support of its present position that the public waters of Lake Champlain extend to the water's edge, regardless of underlying land ownership. It could hardly be expected that they would do so in view of the fact, as defendants stress, that the question now sought to be raised by the State was never raised below, and did not constitute an issue in the case as tried.

What the defendants do state here is that the case below, having been tried upon a certain theory, acquiesced in by court and counsel, the theory thus adopted, whether right or wrong, becomes the law of the case. *Merrill* v. *Reed,* 123 Vt. 248, 252, 185 A.2d 737. Further, asserts the defendants, the claim the State now seeks to assert is made here for the first time, and is not for consideration, nor can the trial court be put in error on a point not made below.

But the phrase "law of the case" is essentially a rule of practice. The doctrine is not that of stare decisis, nor yet that of res judicata, although akin to each. It rests for its absolute integrity

upon sound public policy which does not permit the parties to go again and again to the Supreme Court upon the same question. But the power of the Court to depart from the rule, in a proper case, clearly exists. *Perkins* v. *Vermont Hydro-Electric Corp.*, 106 Vt. 367, 415, 177 A. 631 ; *Pellin et al* v. *Connecticut General Life Insurance Co.*, 107 Vt. 129, 178 A. 902.

There can be no doubt that this Court, to prevent injustice, in its discretionary power, can remand a cause, to allow an amendment of pleading, and grant a trial upon the new issues presented. *Cameron* v. *Baily*, 117 Vt. 158, 161, 86 A.2d 643 ; *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt. 269, 288, 187 A. 788.

In addition there is a general rule that although the matter was not raised below, courts may consider error for the first time on appeal when the question affects the public interest.

"When the question is of such a nature that the present welfare of the people at large, or a substantial portion thereof, is involved, a departure from the general rule is warranted and the court is authorized in its discretion to direct its attention to the general welfare, rather than the interest of the parties to the immediate cause." 5 Am.Jur.2d, Appeal and Error, §551, p. 36, and cases there cited.

The public interest and welfare presented here by the State is the public use of the waters of Lake Champlain. This Court will take judicial notice that Lake Champlain is, next to the Great Lakes, one of the larger natural lakes existing in the United States. It is an international water, extending into Canada, but with most of its western shore in the State of New York, and with the eastern side of the lake constituting approximately two-thirds of the western boundary of Vermont.

Lake Champlain is public, navigable waters. *McBurney* v. *Young, supra.* It is extensively used for boating, fishing and other sports, and there are numerous tourist homes, summer camps, lodges and hotels along the lake front. It is used for recreational purposes by some millions of people, and the numbers of such users are continually increasing. (Def. Ex. K.)

As we have before noted, while this Court in a number of decisions ruled on the matter of private ownership, as well as of public owner-

ship, of land underlying the bed of the lake, no decision has yet been made on what right, if any, the public has to sail over lands bordering Lake Champlain between the ordinary high and ordinary low water marks, when such lands are covered with water ; nor as to the hunting and fishing rights of the public in such waters under Ch. II, Sec. 63 of our State Constitution. Involved here also is a determination of the rights, if any, of a landowner, whose property is bounded by the lake, to erect any structure, or to raise in any manner, the bed of the lake which bounds his property, whether such lake bed is privately or publicly owned.

It cannot be doubted that the determination of such questions is vitally important to the public interest and welfare of that substantial part of the general public who sail upon the waters of Lake Champlain, as well as to that other substantial portion of people in this State who own real estate bordering upon the lake, including the defendants in this action.

The State has requested our determination of the questions presented at this time, with a remand for a new hearing to follow such determination, but a proper and orderly determination of the issues now sought to be presented by the State requires an amendment of pleadings by the State, and a possible filing of a new answer by the defendants, if they be so advised. The factual questions, as well as the evidence submitted by the parties pertinent to them, may well be quite different from those presented in the hearing here appealed from. Nor have the defendants had any opportunity, as yet, to submit briefs on the issues that the State wishes us now to determine.

We have already held that a remand and rehearing is required in this cause even in its present status, in order to prevent an injustice. Because the questions which should be decided in this cause are of great public importance not only at the moment, but as a possible precedent in future controversies of like nature involving the public interest in Lake Champlain, in our discretion we grant leave to the State on such remand to the State to amend its pleadings below, if it be so advised, as well as leave to the defendants to amend their answer to reply to the amended complaint.

*The entry is "reversed and remanded."*