EDMONDSON, Chief Judge:
Plaintiff Kenrick Christopher appeals the district court’s granting judgment as a matter of law to Sgt. Barry Tierney (“Tier-ney”) and a new trial to Trooper Jose Hernandez (“Hernandez”), following a five-day jury trial in which both defendants were found liable under 42 U.S.C. § 1983 for using excessive force against Plaintiff. We reverse the grant of judgment as a matter of law to Defendant Tierney but conclude that he is entitled to a new trial. *1363 We affirm the grant of a new trial to Defendant Hernandez.
I. Background
In 1998, the Florida Highway Patrol Tactical Response Team was ordered to secure the residence in which Plaintiff Kenriek Christopher lived so that the Opa-Locka Police Department could execute a search warrant for drugs. The warrant named the owner of the house, but not Plaintiff. While securing the house, three troopers — Tierney, Hernandez, and Sgt. James Durden (“Durden”)— charged into Plaintiffs bedroom.
Plaintiff testified he was alone in the room, lying on his bed, when two masked men dressed entirely in black ran in. The men had guns. Plaintiff was told to get off the bed but did not immediately comply. One of the officers used his gun to push Plaintiff off the bed. Plaintiff landed face down. The officer then put his knee in Plaintiffs back and pulled his right arm behind him until Plaintiff felt his shoulder snap. When Plaintiff asked what the officer was doing, the officer’s partner told Plaintiff to shut up. Plaintiff was then hit in the back of the head with a hard object. Plaintiff felt a warm tingling. After he was cuffed, two officers ordered Plaintiff to stand. When he replied that he could not stand, the officers accused him of lying and carried him outside.
In contrast, Defendant Tierney — the first officer to enter the room — testified that, as he was pushing aside the doorway curtain, a suspect other than Plaintiff grabbed the front of his gun and pulled it forward. Tierney fell on top of the man (not Plaintiff). After a short struggle, Ti-erney secured and handcuffed the man. Tierney claims his attention was entirely occupied by this suspect, he did not touch Plaintiff or say anything to him, and he does not know what Hernandez or Durden said or did while in the room.
Defendant Hernandez testified that he entered the room after Tierney, saw Plaintiff standing near the bed, and yelled “get down.” Plaintiff did exactly as told. Hernandez testified he did not recall touching Plaintiff and that he did not remember who handcuffed Plaintiff, although it would have been normal procedure for Plaintiff to have been handcuffed. He has no recollection of what the other troopers said or did while in the room.
Durden testified that Tierney and Hernandez were briefly held up at the entrance to the room. Durden entered the room after them and immediately stepped up onto a mattress. Durden noticed two black male suspects on the ground directly in front of him, between the bed and doorway. His attention then turned to a curtained doorway leading to a bathroom. Durden claims he never touched the suspects and has no memory of how Plaintiff was handcuffed or what the other troopers said or did while in the room.
After being carried outside, Plaintiff was twice checked on by a Miami-Dade Fire Rescue crew summoned by the troopers. Although tests did not indicate Plaintiff required transport, an ambulance was eventually called. During transport, Plaintiff told the EMT he had been assaulted by police. At the hospital, doctors discovered a blood vessel had ruptured in Plaintiffs brain. He underwent brain surgery, spent three weeks in the hospital, and is now permanently disabled.
Plaintiff was born with an arteriovenous malformation (“AVM”), which makes the brain’s vascular structures susceptible to rupture. At trial, Plaintiff called Dr. Lust-garten, an expert neurologist and neurosurgeon, who testified that the probability of an AVM spontaneously bleeding was 1% per year and that the rupture of Plaintiffs *1364 AVM was more likely than not caused by trauma to the back of the head. Defendants called Dr. Barredo, a neurologist who testified that the risk of spontaneous rupture was 2-3% per year, that head trauma is not a known cause of AVM rupture, that the rupture was most likely caused by heightened blood pressure attributable to surprise or apprehension, and that ruptures may cause a pain sensation similar to being hit. Dr. Hamilton, Plaintiffs treating neuropsychologist, testified that Plaintiffs memory was not intact when he arrived at the hospital, and that his memories were likely reconstructed by others. Plaintiff had no bruising on the back of his head, but doctors testified that a hit with a blunt object would not necessarily cause bruising.
Before trial the district court granted summary judgment against “Plaintiffs claims that the Officers used excessive force in rolling him off of the bed; handcuffing him; and dragging him to the liv-ingroom.” The court concluded that “other than the alleged blow to the head, the acts of which the Officers are accused” involved de minimis force and “even if the force used by the officers was not de min-imis, the Officers would be entitled to qualified immunity with regard to these claims.” The only potential ground for liability remaining at the time of trial was that an officer intentionally hit Plaintiff in the back of the head. The jury found both Defendants Tierney and Hernandez liable for use of excessive force and awarded Plaintiff $6,725 million in damages. The district court then granted judgment as a matter of law in favor of Tierney and granted Hernandez a new trial.
II. Discussion
A. Judgment as a Matter of Law
We review the grant of judgment as a matter of law (“JMOL”) de novo, applying the same standard as the district court. Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir.2005). JMOL is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action. Id. But if there is substantial conflict in the evidence, such that “reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied.” Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir.1995).
The district court erred by granting judgment as a matter of law for Tierney. Tierney claimed that he did not touch Plaintiff and that Tierney’s attention was entirely focused on subduing another suspect who grabbed his gun as Tierney entered the room. But the jury was not required to believe Tierney, whose testimony was directly contradicted by Plaintiffs testimony that he was alone in the room when the officers entered. Tierney also did not identify the supposed suspect or explain what happened to him after Tierney handcuffed him and guided him out of the room.[1] Because sufficient conflict existed in the evidence presented to permit rational jurors to reach differing decisions on whether Tierney hit Plaintiff, the grant of judgment as a matter of law was incorrect.
B. New Trial Order
Following the jury trial, Tierney and Hernandez jointly moved for judg *1365 ment as a matter of law “or for a new trial on all issues under Fed.R.Civ.P. 59.” The court granted a new trial for Hernandez and judgment as a matter of law for Tier-ney, but the court did not rule on Tierney’s motion for new trial as required by Fed. R.Civ.P. 50(c)(1).[2] Tierney did not press the trial court to rule conditionally on the new trial motion after it granted JMOL, but he did specifically request that we rule on the motion. Defendants were jointly sued, tried, and found liable; the grounds on which the district court granted a new trial for Hernandez are equally applicable to Tierney. Under the circumstances, we will accept that the district court would have granted Tierney a new trial based on the same grounds as for Hernandez if the court had made the required conditional ruling.[3]
We review the trial court’s grant of a new trial for abuse of discretion. McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir.1990). In this case, the district court based its decision to grant a new trial on several factors.
First, during closing argument, Plaintiffs counsel ignored the court’s earlier grant of qualified immunity to Defendants for all alleged acts other than an intentional blow to the head by — in rebuttal at the tail of the trial — injecting this argument:
“[SJomehow this whole case has turned into a singular blow to the head ... when we all know that if they assaulted him and it was that assault that raised his blood pressure, as they would like you to believe it was a blood pressure raise, then they are responsible. This is not a case about a singular blow to the head. This is a case about explaining how someone who didn’t have a finger put on him came out in the condition he came out in, which they cannot explain and refuse to explain.”
“[Tjhey are taking an isolated situation and trying to attack a singular portion of *1366 this case and making it seem that we have to prove a specific blow to a specific area of the body and that is not true. We simply have to prove to you that he was the victim of unreasonable force, and we know that the standard is that if he didn’t resist and if he didn’t obstruct and if he didn’t disobey and if he didn’t interfere, they are not allowed to strike him or shake him or in any way physically do anything improper to him.”
(R. 347 at 703-04.) Defense counsel did not object to this argument at trial. But “where the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised.” McWhorter, 906 F.2d at 677; See Fed.R.Civ.P. 61 (setting out substantial justice standard).[4]
Plaintiffs counsel argues the quoted portion of its closing argument did not clearly violate the qualified immunity order, because when read in context, it — he says — meant only that this was a case about credibility: all of Plaintiffs injuries and allegations — not just the blow to the head — were relevant to the credibility of Defendants who denied having ever touched Plaintiff. But Plaintiffs counsel’s comment that “they are ... making it seem that we have to prove a specific blow to a specific area of the body and that is not true” was a clear invitation to the jury to hold Defendants liable based on conduct other than an intentional blow to the head, in direct contravention of the court’s earlier qualified immunity order.[5] The statement that the jury could find Defendants liable if they believed Plaintiffs injuries were caused by a rise in blood pressure, which in turn was caused by Defendants’ conduct, was also misleading. Plaintiffs blood pressure may have spiked due to surprise or fear caused by Defendants charging into the bedroom, pointing guns at Plaintiff, forcing him to the ground, and handcuffing him. But the district court had already granted Defendants qualified immunity for this conduct, ruling that it *1367 was not clearly excessive.[6] As the case was to be tried, given the district court order, Defendants could only be held liable for injuries resulting from a sudden rise in blood pressure if it was caused by the intentional blow to the head, rather than Defendant’s other acts.[7]
Plaintiffs counsel’s improper closing argument prejudiced the substantial rights of Defendants by taking away from Defendants the benefits of the partial summary judgment they had won before trial and by incorrectly expanding the grounds for liability at trial to include grounds ruled out by the court.[8] Especially in the light of the district court’s preexisting immunity order granting Defendants partial summary judgment, we believe Plaintiffs counsel’s closing argument about liability for conduct other than an intentional blow to the head warrants, by itself, a new trial. The district court’s grant of a new trial served to protect the rights of Defendants and to vindicate the authority of the court. See McWhorter, 906 F.2d at 677 (concluding that a new trial was in the interest of substantial justice where counsel referred to an exhibit not in evidence during closing argument and argued a theory the district court had specifically prohibited in a motion in limine). We therefore cannot say that the district court abused its discretion in determining that the interests of substantial justice warranted a new trial.
*1368 Other grounds identified by the district court buttress the decision to grant Defendants a new trial. For example, Plaintiffs counsel made a series of statements that arguably implied to the jury that the State of Florida was underwriting the costs of defense. The court sustained objections to these comments, gave a curative instruction, and threatened to hold Plaintiffs counsel in contempt, to which he responded in the jury’s presence, “Well, so be it, sir. I’m representing a client whose life is on the line.” Also, during closing argument, Plaintiffs counsel twice made references to “police brutality” being caused by “the differences of people.”[9] Both times the trial court overruled Defendant’s objections, but the court later concluded the statements were “calculated to make the jurors believe this was another case of racially motivated police brutality.” [10]
The trial court also determined that the jury’s award of $4 million in non-economic damages, $225,000 in past medical expenses, and $2.5 million for future medical and custodial expenses was manifestly excessive and swayed by passion. The award for future expenses was 40% higher than the highest number testified to by Plaintiffs sole witness on the subject, and the award for past medical expenses was nearly twice the $116,887 supported by the evidence. “[A] grossly excessive award may warrant a finding that the jury’s verdict was swayed by passion and prejudice ... thus necessitating a new trial,” but “a new trial should only be ordered where the verdict is so excessive as to shock the conscience of the court.” Simon v. Shearson Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir.1990). The gross excessiveness of these awards casts doubt on the validity of the entire verdict, including liability and the $4 million in non-economic damages.[11]
III. Conclusion
In a reasoned order, the district judge found that the trial over which he presided and which he observed directly was not “a fair trial.” We have reviewed the record, and it supports the district court’s decision. In addition, we know that review of the cold record on appeal is not the same thing as being at the trial and observing the subtleties of tone and of demeanor for not just the speaker, but the listeners. The trial judge has the advantage; and given that the realities of a trial involve imponderables, Rule 59 (even in the light of Rule 61) is intended to allow that advantage to act for substantial justice. We cannot say the district court abused its discretion by deciding that the circumstances warranted a new trial. Accordingly, we affirm the grant of a new trial for Trooper Hernandez. We reverse the *1369 grant of judgment as a matter of law for Sgt. Tierney, but conclude that Sgt. Tier-ney is entitled to a new trial on the same grounds as Trooper Hernandez.
REVERSED in part, AFFIRMED in part, and REMANDED.

. Even if the jury believed Tierney's testimony that he was pulled to the floor by a second suspect, the room was sufficiently small — six feet by eight feet, mostly occupied by a bed— that Officer Tierney could have reached over and hit Plaintiff while Plaintiff was being handcuffed by Hernandez.

. Fed.R.Civ.P. 50(c)(1) provides: "If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for new trial.”

. Where a Defendant fails to pursue his motion for a new trial with the district court after the cotirt grants JMOL without making the alternative ruling required by Fed.R.Civ.P. 50(c)(1), and the Defendant fails to argue for a new trial ruling on appeal, this Court has treated the issue as abandoned. Edwards v. Bd. of Regents of Univ. of Ga., 2 F.3d 382, 384 n. 6 (11th Cir.1993). This Court has not previously considered the proper course where a party does not press the issue with the district court that failed to make a conditional ruling, but preserves the issue on appeal. Other federal courts are in disagreement on the proper course to take in these circumstances. Compare Rhone Poulenc Rorer Pharmaceuticals, Inc. v. Newman Glass Works, 112 F.3d 695, 698-99 (3d Cir.1997) (remanding to district court for a ruling on new trial motion); Acosta v. City and County of San Francisco, 83 F.3d 1143, 1149 (9th Cir.1996) (stating that appeals court has discretion to decide the new trial motion on its own or remand to the district court); Isaksen v. Vermont Castings, Inc., 825 F.2d 1158, 1165 (7th Cir.1987) (remanding for ruling on. new trial motion); Nodak Oil Co. v. Mobil Oil Corp., 526 F.2d 798, 798 (8th Cir.l975)(remanding for a ruling on new trial motion while retaining jurisdiction). Our decision to accept that the district court would have conditionally granted a new trial is limited to the circumstances now before us: the trial court granted a new trial to Defendant Hernandez on grounds equally applicable to Tierney. "Concerning similars the judgment is the same.” S.S. Peloubet, A Collection of Legal Maxims in Law and Equity, ¶419 (Rothman 1985) (1884) ("De similibus idem est judici-um”).

. We stress that the case before us is not one in which we are asked to reverse a denial of a . motion for new trial and in which the grounds for the new trial motion were not objected to during the underlying trial. Compare Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1178 (11th Cir.2002) (appellate court applying plain error review to counsel's closing argument to determine if the district court erred in denying a motion for new trial where the motion was based on argument to which there was no objection during trial); compare also Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir.1993) (appellate court not reviewing denial of new trial by district court but reviewing the district court's judgment on the jury verdict and applying plain error review to determine whether district court’s judgment must be vacated based on closing argument not objected to during trial); Woods v. Burlington Northern R.R. Co., 768 F.2d 1287, 1292 (11th Cir.1985), rev'd on other grounds, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (same). Because granting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before him, an appellate court may uphold a district court's discretionary grant of new trial without deciding whether the case contains the kind of prejudicial, plain error that would compel the appellate court to set aside a judgment on direct appeal if a motion for new trial had not been granted.

. The district court's previous order granting partial summary judgment included these words:
The Court finds that under the circumstances of this case, the Officer's alleged actions, with the possible exception of the blow to the Plaintiffs head, would not inevitably lead every reasonable officer in the Defendants' position to conclude the force was unlawful.... Therefore, even if the force used by the officers was not de min-imis, the Officers would be entitled to qualified immunity with regard to these claims.
(R. 259 at 8.)

. On appeal Plaintiff does not challenge this grant of immunity.

. The district court said these things about the pertinent argument:
Plaintiff's counsel's argument in rebuttal stating that "[t]his is not a case about a singular blow to the head” (Tr. 704) was contrary to the Court's pretrial grant of qualified immunity to Defendants for any actions other than an alleged blow to the head. The Court made clear in its Summary Judgment Order that the following actions: rolling him off the bed onto the floor, hurting him while handcuffing him, and dragging him from the bedroom to the living room appeared to be reasonable under the circumstances and therefore entitled to qualified immunity. This case was designed to answer the sole question of whether there was a blow to the Plaintiff’s head inflicted by the Defendants. Therefore, because the Defendants were granted immunity from suit for any claims of excessive force other than a blow to the head, the foregoing remark and others of its kind by Plaintiff's counsel were fundamentally erroneous and warrant a new trial.
(R. 362 at 2.)

. By the way, no specifically curative instruction was given to the jury to disregard Plaintiff's improper argument. About a blow to the head, in some fifteen pages of regular jury instructions was only one sentence: "Plaintiff claims that one of the Defendants struck him on the head, causing injury.” But the jury instructions on the law that was to be applied to the case — including the definition of unreasonable force and the elements the jury must find to hold Defendants liable — did not express that liability had to be tied to Plaintiff's establishing by evidence that he had suffered a blow to the head. The sentence we have quoted is not one that commands the jury to do or not to do something; it merely describes what Plaintiff was claiming — a description that the jury would recognize as incomplete in the light of the closing argument it had just heard that expanded the basis for liability claimed by the Plaintiff. We easily conclude that an objectively reasonable trial judge could determine that the jury instructions, including this single sentence, did not cure the harm caused by Plaintiff's counsel’s expansive argument on grounds for liability. We do not suggest (much less decide) that even a textbook-perfect, specific curative instruction, had one been given, would have deprived the district court in this case of its authority to grant a discretionary new trial in the light of Plaintiff’s argument made contrary to the district court’s pretrial grant of qualified immunity. In the hypothetical case with a strong curative instruction, the district court, we suppose, would not be absolutely obliged to find that its curative instruction was, in fact, effective to cure the harm done by the unfair argument.

. This statement was part of Plaintiff’s counsel’s response to the defense argument that Plaintiff had failed to explain why police would beat an unresisting innocent man.

. The record reflects that Plaintiff is black and that Tierney, Hernandez, and Durden are not black.

. We see the juty's award of excessive damages as proof that Plaintiff’s counsel’s misconduct probably influenced the jury. This case was one in which liability was highly contested. We think it is not possible to say that the misconduct influenced the amount of damages but probably did not influence the verdict on liability.
We note that Defendants (in addition to a separate motion for new trial on damages) sought a new trial "on all issues,’’ which we-— as the district court did — readily understand to include the issue of liability; we note also that Defendants pointed to the award of excessive damages as proof that Plaintiff's counsel’s misconduct tainted the "proceedings," which we — as the district judge did — readily understand to mean the entire trial, including the verdict on liability.