2007 VT 103

# In re Petition of Entergy Nuclear Vermont Yankee, LLC, et al.

[939 A.2d 504]

No. 06-161

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed September 14, 2007

*Ronald A. Shems* and *Karen Tyler* (On the Brief) of *Shems Dunkiel Kassel & Saunders PLLC*, Burlington, for Appellant.

*Sarah Hofmann*, Montpelier, for Appellee Vermont Department of Public Service.

*Victoria J. Brown* and *Joslyn Wilschek* of *Primmer Piper Eggleston & Cramer, PC*, Burlington, for Appellees Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.

¶ 1. **Dooley, J.** The New England Coalition (NEC) appeals a Public Service Board order. The Board concluded that the conditions set by its previous decision had been satisfied and thereafter authorized Entergy Nuclear Vermont Yankee, LLC, and Entergy Nuclear Operations, Inc. (Entergy) to increase power output at the Vermont Yankee nuclear power plant. NEC claims the Board violated statutory procedural requirements by not conducting an evidentiary hearing before determining that those conditions were met. We conclude that NEC failed to preserve this issue for appeal and therefore affirm without reaching the merits of the parties' arguments.[*]

¶ 2. In 2003, Entergy requested Board approval for an "uprate" increase in the power production of Vermont Yankee. Through an order dated March 15, 2004, the Board authorized the issuance of a Certificate of Public Good (CPG) under 30 V.S.A. § 248 and approved the uprate subject to the satisfaction of a set of conditions put forth by the Board. These conditions included a requirement that the Board request that the Nuclear Regulatory Commission (NRC) perform an independent assessment of the power plant. NRC completed its assessment and summarized its

[*] Additionally, Entergy moved this Court to strike certain of NEC's attachments to its appellate reply brief. The attachments consist of a petition and testimony made before the Board in a separate but factually-related case. In light of our disposition of this appeal, these attachments are irrelevant, and the motion to strike is therefore moot.

findings in a report issued in December 2004, which Entergy filed with the Board on December 27, 2004.

¶ 3. Following NRC's assessment, NEC filed a letter in which it "move[d] the Board to order and schedule a brief comment period (10 to 15 days) for all parties on the question of acceptance of the [NRC inspection] as fulfilling the condition for an independent engineering assessment as defined in the Board's Order of March 15, 2004." Thereafter, the Board solicited and received comments from NEC and other parties regarding NRC's inspection process and its results. NEC, through its pro se representative, filed numerous comments and motions. First, by a submission dated January 12, 2004, it filed its "Comments and Motion Regarding [Entergy's] Filing of December 27th." Because of its prominence in NEC's arguments discussed herein, we reprint the text of NEC's January 12 motion in full. It read as follows:

For all of the good reasons above New England Coalition now respectfully moves the Board to

(1) [R]eject the engineering team inspection and report as unsuited and unsatisfactory to its needs in determining projected reliability of Vermont Yankee Nuclear Power Station under conditions of extended power uprate,

(2) [O]rder that Entergy shall provided [sic] funds for a four deep slice inspection to be conducted by a private contractor to be chosen through mutual agreement of the parties, and that the inspection be so conducted as to meet all of the criteria and satisfy the purposes set forth in the Board's Order of March 15, 2004. Further, that the team for this inspection shall include two members from New England Coalition and two members designated by the State of Vermont[,]

(3) Invoke the Board's broad discretionary powers under Title 30, in particular, 30 V.S.A. § 209, to issue an opinion advising the Governor and the Legislature on the complexity and serious nature of extended power uprate issues, together with a recommendation that the Governor and the Legislature endorse resolutions calling for a full Independent Safety Assessment on behalf of Vermont people; on the order of that conducted for Maine people at the request of the Governor of Maine in 1996.

The comments portion of NEC's January 12 filing concludes:

> The Board has ample evidence to make [a finding that NRC's report does not meet the Board's purposes], but could schedule oral argument with a presentation by NRC and/or additional evidentiary proceedings without waiting for [the NRC Advisory Committee on Reactor Safeguards] and NRC Commission review if it chooses.

¶ 4. On February 3, 2005, NEC filed another "Response to Comments Regarding [Entergy's] Filing of December 27th." In this response, NEC reprinted and renewed its January 12 motion. At the conclusion of the February 3 filing, NEC requested that "if the Board [had] any doubts as to a just decision, and one that is adequately protective of the people of Vermont, an evidentiary hearing and oral argument [should] be scheduled on a timetable that [would] allow[] the parties ample time to gather evidence and prepare their case."

¶ 5. On June 6, 2005, NEC filed comments a third time, this time in response to an oral argument held by the Board on May 27, 2005. These comments renewed NEC's January 12 and February 3 motions, and again reprinted the text of the January 12 motion. Shortly thereafter, by motion dated June 22, 2005, NEC asked the Board to "seek the advice of the Vermont State Nuclear Advisory Panel ("VSNAP") for the purpose of aiding the Board in evaluating" NRC's inspection. NEC supplemented this motion on July 6, 2005, but did not change its requested relief. NEC also responded, on July 15, 2005, to Entergy's opposition to this motion and expressly stated that "[NEC] is not at this point moving to reopen the record." It separately responded to the Department of Public Service's opposition to its motion on July 18, 2005. In its response, NEC did not change its requested relief, and reprinted, in part, its motions of January 12 and February 3.

¶ 6. Ultimately, by order dated March 3, 2006, the Board concluded that NRC's inspection met the assessment condition of the March 15, 2004 order. NEC appealed, and on March 31, 2006, through its attorney, requested that the Board enter a stay pending appeal. Here, NEC claimed that the Board allowed Entergy to proceed with the uprate in its March 3, 2006 order "without any hearing addressing the new evidence on which it relieve[d] Entergy from the March 15, 2004 judgment, and nearly a year after expiration of the deadline by which governing

procedural rules required Entergy to request such relief" and thus, "the Board's actions violate[d] V.R.C.P. 59 and 60." In its response to Entergy's opposition to the motion for stay, NEC argued that the Board's failure to conduct an evidentiary hearing violated the Vermont Administrative Procedure Act (VAPA). The Board denied NEC's motion for a stay on April 5, 2006, concluding in part that there was "ample opportunity to comment, seek such a hearing, or file additional argument" but that, although the "parties submitted multiple rounds of comments, no party, including NEC, sought further hearings." The Board found that NEC raised the issue for the first time in its motion for stay, which was "simply too late."

¶ 7. NEC argues on appeal that the Board violated the statute that created the Board, VAPA, 30 V.S.A. § 9, and 30 V.S.A. § 248 in failing to conduct an evidentiary hearing before making the final determination that the NRC assessment met the requirements of the March 15, 2004 order. It claims that the Board's "fundamental procedural violations prevented NEC from cross-examining and otherwise testing the scope of the NRC inspection, and its sufficiency as the exclusive evidence supporting the Board's finding of the uprate's reliability and economic benefit." Ultimately, NEC's requested relief in this Court is that the March 3, 2006 order be "reversed and vacated and this matter remanded to the Board for contested evidentiary hearings on whether Entergy meets § 248's reliability and economic benefit criteria."

¶ 8. Entergy first contends that NEC failed to preserve its request for an evidentiary hearing because it never demanded such a hearing before the Board. NEC counters with four primary claims: (1) it preserved the issue in its January 12 motion, or alternatively, in its motion for stay filed after the March 3, 2006 order; (2) application of the preservation doctrine does not apply because the appealed error "was first apparent upon the Board's issuance of its March 3, 2006 Order"; (3) NEC "was not required to raise or 'preserve' its adjudicatory rights in the context of a public comment process that, according to the Board, was to have no evidentiary significance," particularly where it appeared pro se before the Board; and (4) that the Court should invoke a "public interest" exception to the preservation rule. We address each of NEC's preservation arguments in turn.

¶ 9. As NEC acknowledges, even when reviewing decisions of the Board, this Court will not address arguments not properly

preserved for appeal. See, e.g., *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001); *In re Twenty-Four Vt. Utilities*, 159 Vt. 339, 352, 618 A.2d 1295, 1303 (1992). The purpose of the rule is to "ensure that the original forum is given an opportunity to rule on an issue prior to our review." *White*, 172 Vt. at 343, 779 A.2d at 1270-71. We agree with other courts that "allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error, a policy we have admonished." *Christopher v. Florida*, 449 F.3d 1360, 1370 (11th Cir. 2006) (citing *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002)).

■ ¶ 10. We are unpersuaded by NEC's argument that it raised the issue of its right to an evidentiary hearing in its January 12, 2004 motion. Preservation requires a party to "present the issue with specificity and clarity" to give the original forum "a fair opportunity to rule on it." *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). The words "evidentiary hearing" do not appear in the January 12 motion that NEC repeatedly reprinted in subsequent filings. The motion's three requests are straightforward; it asks the Board to: (1) reject NRC's report, (2) order a "four deep slice inspection" by an independent contractor, and (3) advise "the Governor and Legislature on the complexity and serious nature of extended power uprate issues," and recommends that they "endorse resolutions calling for a full Independent Safety Assessment on behalf of Vermont people." These requests are neither a specific nor clear articulation of NEC's appellate argument that VAPA, the statute that created the Board, and 30 V.S.A. § 248 required the Board to hold an evidentiary hearing before accepting NRC's assessment as sufficient for purposes of the Board's previous order.

¶ 11. We are mindful of NEC's reference to an evidentiary hearing in the comments portion of its January 12 motion, as well as its February 3 filing. Nevertheless, these references suggest that the Board "could" *in its discretion* order such a hearing "if it chooses," or if it had "any doubts as to a just decision." We cannot agree that these statements are a clear articulation of NEC's argument that at least three separate statutes compelled the Board to conduct an evidentiary hearing.

■ ■ ¶ 12. We are also cognizant of NEC's pro se status at the time of these filings. Although we afford pro se litigants greater

flexibility with respect to the preservation rules already mentioned, this flexibility, without more, is not sufficient to convince us that NEC raised below the issues it argues on appeal. See *Vahlteich v. Knott*, 139 Vt. 588, 590-91, 433 A.2d 287, 288 (1981) (explaining that although this Court affords greater flexibility to pro se litigants, "[t]his does not mean that [they] are not bound by the ordinary rules of civil procedure"); Public Service Board Rule 2.201(B), 8 Code of Vermont Rules 30 000 001-8 (stating that pro se participation "shall in no respect relieve any person or party from the necessity of compliance with any applicable rule, law, practice, procedure or other requirement").

¶ 13. Nor do we find availing NEC's argument that it sufficiently preserved the evidentiary-hearing claim in its post-judgment motion. On this point, NEC relies on *Twenty-Four Vermont Utilities*, 159 Vt. at 352-53, 618 A.2d at 1303, and *In re Quechee Lakes Corp.*, 154 Vt. 543, 552, 580 A.2d 957, 962 (1990). In *Twenty-Four Vermont Utilities*, we found that an issue was not preserved where a party had failed to raise it before the Board, and had "filed post-judgment motions but failed to raise the ground asserted" on appeal. 159 Vt. at 352, 618 A.2d at 1303. In *Quechee Lakes*, an Act 250 case, we deemed an argument "waived because [appellant] failed to raise it before the Board in a post-decision motion made under Environmental Board Rule 31." 154 Vt. at 552, 580 A.2d at 962.

¶ 14. Neither of these cases support the general proposition that raising an issue for the first time in a post-judgment motion is sufficient. In fact, both involved an alleged misuse of evidence — in *Quechee Lakes*, findings based on site visit observations, 154 Vt. at 552, 580 A.2d at 962, and in *Twenty-Four Vermont Utilities*, 159 Vt. at 349-50, 618 A.2d at 1301-02, computer models based in part on data and programs not in the record — that was not advocated by any party and became apparent only through the agency decision. Opposition to the use of the evidence in these cases had to be raised in a post-judgment motion, if at all, because the asserted error did not arise prior to the judgment. As we will explain, the case at bar is readily distinguishable.

¶ 15. As an initial matter, the motions in *Quechee Lakes* and *Twenty-Four Vermont Utilities* requested the agency to vacate, alter, or amend its judgment. NEC filed no such motion to vacate, amend or alter the March 3, 2006 order, and the judgment

became final for purposes of appeal. Instead, NEC raised the issue in the context of a stay request, when it was too late for the Board to rule on the procedural issue in reaching its decision. Although in certain circumstances litigants may preserve issues in post-judgment motions, they may not do so when those issues should have been raised in earlier proceedings before the Board.

¶ 16. We also note that NEC did not raise the appeal issue in its motion for a stay. Only in its reply to Entergy's opposition to the motion for stay did NEC finally argue that the Board's March 3, 2006 order violated VAPA. Even if we held that issues could be raised in a motion for a stay designed to preserve them, this issue was raised too late. See *Hoffer v. Ancel*, 2004 VT 38, ¶ 19, 176 Vt. 630, 852 A.2d 592 (mem.) (issue raised for the first time in a reply memorandum came "too late to preserve it").

¶ 17. NEC's second preservation argument is that the alleged procedural violation was only apparent from the Board's March 3, 2006 order. Here, NEC urges that it could not have foreseen that the Board would reach a final decision approving the uprate based on public comments alone instead of holding a post-public-comment evidentiary hearing. This, according to NEC, is because the Board "typically" holds post-public-comment evidentiary hearings, as it was required to do here. We note again that NEC repeatedly argued that the Board had the discretion, but not the obligation, to hold an evidentiary hearing. In any event, if NEC's argument were that such a hearing was required, we see no reason why it could not have preserved that argument at the time when the Board was taking public comment but had not yet scheduled an evidentiary hearing. The situation here is wholly different from that in *Quechee Lakes* and *Twenty-Four Vermont Utilities*, where the alleged error was unpredictable and was not induced by any party.

¶ 18. NEC's third argument is that the rule of preservation should not apply with equal force to public notice and comment proceedings as compared to adjudicatory proceedings. NEC notes, as we have recognized before, that "[i]n a § 248 proceeding, the Board is engaged in a legislative, policy-making process." *Twenty-Four Vermont Utilities*, 159 Vt. at 357, 618 A.2d at 1306 (internal quotation omitted). Nevertheless, we have upheld application of the preservation rule in this "legislative" process before, and we see no reason to depart from that practice here. See, e.g.,

*id.* at 352-53, 618 A.2d at 1303 (dismissing argument not raised first to the Board in the context of a § 248 proceeding). The policy in favor of first affording the original forum the opportunity to correct its own alleged error is the same.

¶ 19. Finally, we reject NEC's argument regarding the application of the "public interest" exception to the preservation doctrine. We have recognized a limited exception to the preservation doctrine "[w]hen the question is of such a nature that the present welfare of the people at large, or a substantial portion thereof, is involved." *State v. Cain*, 126 Vt. 463, 470, 236 A.2d 501, 506 (1967) (quotation and citation omitted); see also *In re J.E.G.*, 144 Vt. 309, 313-14, 476 A.2d 130, 133 (1984) (addressing unpreserved issue due to "protective nature" of juvenile hearings, citing *Cain*). *Cain* involved an important substantive issue: whether there was a public right to use the waters of Lake Champlain that passed over submerged land in private ownership. The issue arose in a dispute over defendant's action in placing landfill in the lake to create more land in his shore property. The Court decided the case on the issue presented, but recognized that the case had been presented on the wrong theory. The Court remanded to the superior court so that the correct theory could be applied, even though the State, as plaintiff, had induced the error by proceeding on the wrong theory when the case was originally in the trial court. See *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 446, 306 A.2d 119, 125 (1973) (*Cain* "was tried on a mistaken view of the law").

¶ 20. We recognize the public interest in ensuring that the Vermont Yankee plant operates safely, but the exception set forth in *Cain* is not broad enough to allow us to ignore the important rules of preservation at issue in this case. The fear in *Cain* was that the resolution of an important substantive issue on the wrong grounds would become a precedent for improper consideration of public rights. The issue presented here is procedural: whether NEC was entitled to the formalities of a trial when presenting its evidence. By not acting on the appeal, we set no precedent for how the Board must proceed in the future in similar circumstances. To the extent that *Cain* recognizes a limited public interest exception to the preservation rule, that limited exception does not apply here.

¶ 21. Ultimately, application of the preservation rule to this case does not amount to rigid enforcement of "form over substance," as

NEC contends. The entire thrust of NEC's appeal — that various statutes required the Board to conduct an evidentiary hearing before entering its March 3, 2006 order — was simply not made to the Board. Because the substance of NEC's appeal is too far removed from what it argued to the Board, it is not appropriate for our review.

*Affirmed.*